UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

CHRISTOPHER ANDRE VIALVA,  §
  Petitioner,  §
        §  No. 2:20-cv-00413-JMS-DLP
  v.  §  Capital Case
        §  Execution Scheduled Sept. 24
WARDEN, et al.,  §
  Respondents.  §

_____

**RESPONDENTS' RETURN TO ORDER TO SHOW CAUSE**

_____

JOSH J. MINKLER
United States Attorney

*s/ Elizabeth Berenguer*
ELIZABETH BERENGUER
Special Assistant United States Attorney
601 NW Loop 410, Suite 600
 San Antonio, Texas 78216
(210) 384-7100 (phone)
(210) 384-7126 (fax)
elizabeth.berenguer@usdoj.gov

# TABLE OF CONTENTS

STATEMENT OF ISSUES ....................................................................................ii

TABLE OF AUTHORITIES ...............................................................................iii

RETURN TO ORDER TO SHOW CAUSE ..................................................... 1

BACKGROUND .................................................................................................... 1

   I.   The Murders of Todd and Stacie Bagley ...................................................... 2

   II.  Vialva's Trial and Sentencing ....................................................................... 4

   III. Post-Trial Proceedings ................................................................................... 6

        A.   Direct Appeal ....................................................................................... 6

        B.   Section 2255 Proceedings.................................................................... 6

        C.   Rule 60(b)(6) Proceedings ................................................................ 12

   IV. Vialva's Current Habeas Petition ............................................................... 15

ARGUMENTS .................................................................................................... 17

   I.   Vialva Cannot Use a Habeas Petition Under 28 U.S.C. § 2241 to
      Relitigate Constitutional Claims That Were Already Raised and
      Rejected on the Merits During His 28 U.S.C. § 2255 Proceedings. ............. 17

   II.  Vialva's Claims Lack Merit. .......................................................................... 22

        A.   The District Court's Failure to Comply with the Technical
            Requirements of 18 U.S.C. § 3005 Did Not Deprive Vialva
            of the Assistance of Counsel. ........................................................... 22

        B.   Vialva Waived Any Potential Conflict of Interest, And He
            Was Not Prejudiced in Any Event. ................................................. 24

        C.   Vialva Cannot Show *Strickland* Prejudice or Deficient
            Performance in the Penalty Phase of His Trial........................... 27

        D.   The Eighth Amendment Does Not Preclude the Death
            Penalty Based on Vialva's "Mental Age" at the Time of
            His Offenses. ..................................................................................... 34

   III. A Stay of Execution Is Not Warranted. ....................................................... 41

CONCLUSION.................................................................................................... 44

CERTIFICATE OF SERVICE .......................................................................... 45

## STATEMENT OF ISSUES

I.     Whether Petitioner may use a habeas petition under 28 U.S.C. § 2241 to relitigate constitutional claims that were already raised and rejected on the merits during his 28 U.S.C. § 2255 proceedings.

II.    Even if the Saving Clause permitted Petitioner to raise those previously-litigated claims in his habeas petition, whether Petitioner would be entitled to relief on the merits of his claims.

III.   Whether Petitioner has shown he has met the standard to obtain a stay of his execution.

# TABLE OF AUTHORITIES

## Cases

*Andrus v. Texas,*
    140 S. Ct. 1875 (2020) ........................................................................ 29

*Barr v. Lee,*
    No. 20A8, 2020 WL 3964985 (July 14, 2020) ....................................... 42

*Beets v. Scott,*
    65 F.3d 1258 (5th Cir. 1995 ................................................................ 25

*Boumediene v. Bush,*
    553 U.S. 723, 776 (2008) ..................................................................... 16

*Buck v. Davis,*
    137 S. Ct. 759 (2017) .......................................................................... 15

*Chazen v. Marske,*
    938 F.3d 851 (7th Cir. 2019) ............................................................... 15

*Commonwealth v. Bredhold,*
    No. 14-cr-161 (Fayette Cir. Ct. Aug. 1, 2017) ...................................... 38

*Cordaro v. United States,*
    933 F.3d 232 (3d Cir. 2019).................................................................. 16

*Cuyler v. Sullivan,*
    446 U.S. 335 (1980) ............................................................................ 25

*Garcia v. Bunnell,*
    33 F.3d 1193 (9th Cir. 1994) ............................................................... 25

*Garza v. Lappin,*
    253 F.3d 918 (7th Cir. 2001) ............................................................... 17

*Gomez v. U.S. Dist. Ct.,*
    503 U.S. 653 (1992) ............................................................................ 43

*Gonzalez v. Crosby,*
    545 U.S. 524 (2005) ....................................................................... 13, 14

*Holloway v. Arkansas,*
    435 U.S. 475 (1978) ................................................................. 8, 25, 26

*In re Davenport*,
   147 F.3d 605 (7th Cir. 1998) ....................................................................... 17, 22

*In re Garner*,
   612 F.3d 533 (6th Cir. 2010) ....................................................................... 11, 37

*Jahns v. Julian*,
   305 F. Supp. 3d 939 (S.D. Ind. 2018) ...................................................................... 16

*Lambert v. Buss*,
   498 F.3d 446 (7th Cir. 2007) ....................................................................... 41, 42, 43

*Lee v. Watson* ("*Lee I*"),
   No. 19-3399, 2019 WL 6718924 (7th Cir. Dec. 6, 2019) .............................. 41, 42, 44

*Lee v. Watson* ("*Lee II*"),
   964 F.3d 663, 666 (7th Cir. 2020) .............................................................. 18, 19, 42

*McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc.*,
   851 F.3d 1076 (11th Cir. 2017) (en banc) .............................................................. 18

*Melton v. Tucker*,
   No. 1:08-cv-34-RS, 2013 WL 11326076 (N.D. Fla. May 31, 2013)........................ 37

*Miller-El v. Cockrell*,
   537 U.S. 322 (2003) ............................................................................................. 10

*Nelson v. Campbell*,
   541 U.S. 637 (2004) ............................................................................................. 42

*Nken v. Holder*,
   556 U.S. 418 (2009) ............................................................................................. 41

*Noguera v. Davis*,
   290 F. Supp. 3d 974 (C.D. Cal. 2017) .................................................................... 37

*Parr v. Quarterman*,
   472 F.3d 245 (5th Cir. 2006) ...................................................................... 10, 11, 37

*Prevatte v. Merlak*,
   865 F.3d 894 (7th Cir. 2017) .................................................................................. 16

*Prost v. Anderson*,
   636 F.3d 578 (10th Cir. 2011) ............................................................................... 18

*Purkey v. United States*,
   964 F.3d 603 (7th Cir. 2020) ......................................................................... passim

*Ramirez v. Dretke,*
    398 F.3d 691 (5th Cir. 2005) ....................................................................... 11

*Ring v. Arizona,*
    536 U.S. 584 (2002) ............................................................................... 6, 33

*Robinson v. United States,*
    812 F.3d 476 (5th Cir. 2016) ........................................................... 16, 33, 34

*Roper v. Simmons,*
    543 U.S. 551 (2005) ......................................................................... passim

*Roundtree v. Krueger,*
    910 F.3d 312 (7th Cir. 2018) ................................................................. 20, 22

*Simmons v. South Carolina,*
    512 U.S. 154 (1994) ........................................................................... 30, 32

*State Oil Co. v. Khan,*
    522 U.S. 3 (1997) ................................................................................... 39

*Stoia v. United States,*
    22 F.3d 766 (7th Cir. 1994) ...................................................................... 25

*Strickland v. Washington,*
    466 U.S. 668 (1984) ......................................................................... passim

*United States v. Bernard,*
    299 F.3d 467 (5th Cir. 2002) ............................................................... passim

*United States v. Bernard,*
    762 F.3d 467 (5th Cir. 2014) ............................................................... passim

*United States v. Cisneros,*
    846 F.3d 972 (7th Cir. 2017) ..................................................................... 41

*United States v. Corley,*
    519 F.3d 716 (7th Cir. 2008) ................................................................. 30, 32

*United States v. Duncan,*
    413 F.3d 680 (7th Cir. 2005) ................................................................. 37, 39

*United States v. Fields,*
    483 F.3d 313 (5th Cir. 2007) ..................................................................... 23

*United States v. Hall,*
    455 F.3d 508 (5th Cir. 2006) ..................................................................... 12

*United States v. Harris,*
    408 F.3d 186 (5th Cir. 2005) ................................................................. 29

*United States v. Higgs,*
    353 F.3d 281 (4th Cir. 2003) ................................................................. 34

*United States v. Horton,*
    845 F.2d 1414 (7th Cir. 1988) ............................................................... 26

*United States v. Jackson,*
    935 F.2d 832 (7th Cir. 1991) ................................................................. 29

*United States v. Jenkins,*
    943 F.2d 167 (2d Cir. 1991) .................................................................. 26

*United States v. Lawrence,*
    735 F.3d 385 (6th Cir. 2013) ................................................................. 32

*United States v. Lopez-Cabrera,*
    No. 11-cr-1032-PAE, 2015 WL 3880503 (S.D.N.Y June 22, 2015) ........................ 37

*United States v. Luciano,*
    158 F.3d 655 (2d Cir. 1998) .................................................................. 31

*United States v. Marshall,*
    736 F.3d 492 (6th Cir. 2013) ............................................................. 37, 38

*United States v. Mechanik,*
    475 U.S. 66 (1986) ............................................................................ 34

*United States v. Newell,*
    315 F.3d 510 (5th Cir. 2002) ............................................................. 25, 26

*United States v. Patterson,*
    241 F.3d 912 (7th Cir. 2001) ................................................................. 34

*United States v. Paul,*
    217 F.3d 989 (8th Cir. 2000) ................................................................. 40

*United States v. Shepherd,*
    576 F.2d 719 (7th Cir. 1978) ................................................................. 23

*United States v. Tsarnaev,*
    No. 16-6001, 2020 WL 4381578 (1st Cir. July 31, 2020) ........................ 37

*United States v. Vialva,*
    904 F.3d 356 (5th Cir. 2018) ......................................................... passim

*United States v. Wheeler,*
   886 F.3d 415 (4th Cir. 2018) ........................................................... 16

*United States v. Williams,*
   544 F.2d 1215 (4th Cir. 1976) ......................................................... 23

*Vialva v. United States,*
   136 S. Ct. 1155 (2016) ............................................................. 12, 43

*Vialva v. United States,*
   140 S. Ct. 860 (2020) ......................................................... 15, 22, 43

*Vialva v. United States,*
   539 U.S. 928 (2003) ........................................................................ 6

*Walton v. Arizona,*
   497 U.S. 639 (1990) ...................................................................... 33

*Webster v. Daniels,*
   784 F.3d 1123 (7th Cir. 2015) (en banc) ....................................... 18, 20

*Wiggins v. Smith,*
   539 U.S. 510 (2003) ...................................................................... 28

*Williams v. Chrans,*
   50 F.3d 1358 (7th Cir. 1995) ...................................................... 41, 42

## **Statutes**

18 U.S.C. § 1117 ............................................................................... 4

18 U.S.C. § 2119 ............................................................................... 4

18 U.S.C. § 3005 ......................................................................... 22, 23

18 U.S.C. §§ 1111 ............................................................................. 4

28 U.S.C. § 2241 ..................................................................... passim

28 U.S.C. § 2255 ..................................................................... passim

## **Other Authorities**

Daniel Romer et al., *Beyond Stereotypes of Adolescent Risk Taking: Placing the
   Adolescent Brain in Developmental Context,* 27 Dev. Cognitive Neuroscience
   19 (2017) ................................................................................... 39

Elizabeth Cauffman et al., *Age Differences in Affective Decision Making as Indexed by Performance on the Iowa Gambling Task*, 46 Dev. Psych. 193 (2010) ................................................................................................ 38

General Order, *In re: Court Operations Under the Exigent Circumstances Created By COVID-19 and Related Coronavirus* (S.D. Ind. Mar. 13, 2020).......... 43

Judith Bessant & Rob Watts, *The Mismeasurement of Youth: Why Adolescent Brain Science is Bad Science*, 7 Contemp. Soc. Sci. 181 (2012) ............................ 39

Laurence Steinberg et al., *Age Differences in Future Orientation and Delay Discounting*, 80 Child Dev. 28 (2009)...................................................................... 39

Laurence Steinberg et al., *Are Adolescents Less Mature Than Adults?*, 64 Am. Psych. 583 (2009) ................................................................................................ 38

Michael Males, *Does the Adolescent Brain Make Risk Taking Inevitable? A Skeptical Appraisal*, 24 J. Adolescent Rsch. 3 (2009)............................................ 39

Pet. for a Writ of Cert., *United States v. Vialva*, 140 S. Ct. 860 (cert. denied 2020) (No. 18-1222), 2019 WL 1294672 ................................................................. 22

Pet. for a Writ of Cert., *United States v. Wheeler*, 139 S. Ct. 1318 (cert. denied 2019) (No. 18-420), 2018 WL 5017116 ................................................................. 18

Thomas Grisso et al., *Juveniles' Competence to Stand Trial: A Comparison of Adolescents' and Adults' Capacities as Trial Defendants*, 27 Law & Hum. Behav. 333 (2003)................................................................................................ 38

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| CHRISTOPHER ANDRE VIALVA, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | No. 2:20-cv-00413-JMS-DLP |
| | § | |
| WARDEN, et al., | § | |
| Respondents. | § | |

## RETURN TO ORDER TO SHOW CAUSE

Petitioner Christopher Andre Vialva seeks relief from his death sentence in a petition for a writ of habeas corpus under 28 U.S.C. § 2241. The Court should dismiss his petition with prejudice and deny his request for a stay of execution. An inmate may not obtain relief under § 2241 unless the presumptive mechanism for a postconviction claim, a motion under 28 U.S.C. § 2255, is inadequate or ineffective. A § 2255 motion is not inadequate or ineffective to raise Vialva's constitutional claims, as evidenced by the fact that he already raised these same claims during his § 2255 proceedings. His disagreement with the trial court's resolution of those claims—and the Fifth Circuit's determination that the trial court was not even debatably wrong in rejecting them—does not present one of the rare circumstances in which a habeas petition may proceed under § 2241. And even if this Court could consider Vialva's petition, his claims are meritless.

## BACKGROUND

Vialva is an inmate at USP Terre Haute. In 2000, he was convicted and sentenced to death for the murders of Todd and Stacie Bagley in the Western District of Texas. The Fifth Circuit affirmed his conviction and sentence on direct appeal, and the Supreme Court denied a petition for a writ of certiorari. Vialva subsequently filed a postconviction motion to vacate his sentence under 28 U.S.C. § 2255. The district court denied Vialva's motion, the Fifth Circuit denied his

application for a certificate of appealability (COA), and the Supreme Court denied certiorari. Vialva then filed a second postconviction motion under Federal Rule of Civil Procedure 60(b)(6). The district court dismissed that motion, the Fifth Circuit denied a COA, and the Supreme Court again denied certiorari.

The Department of Justice has scheduled Vialva's execution for September 24, 2020. Vialva now files this habeas petition seeking relief from his death sentence based on constitutional claims the district court and the Fifth Circuit already rejected on the merits during his initial § 2255 proceedings.

## I.   The Murders of Todd and Stacie Bagley

In 1999, Vialva, Brandon Bernard, and three other members of a street gang in Killeen, Texas, carjacked and murdered Todd and Stacie Bagley. *United States v. Bernard*, 299 F.3d 467, 471–73 (5th Cir. 2002). Vialva and fellow gang members Christopher Lewis and Tony Sparks initially developed a plan to abduct and rob a motorist at gunpoint, lock the victim in the trunk of his car, use the victim's bank card to make ATM withdrawals, and then abandon the vehicle (with the victim still locked in the trunk) in a remote area. *Id.* at 471. Bernard and a fifth gang member, Terry Brown, later joined the plot. *Id.*

Bernard drove Vialva and the others around town as they searched for a victim. 299 F.3d at 471. After Bernard and Brown temporarily left the group, *id.* at 472 & n.2, Vialva and the two remaining gang members located suitable victims, Todd and Stacie Bagley, who were youth ministers visiting Killeen from Iowa. *Id.* at 471–72. While Todd used a pay phone and his wife, Stacie, waited in their car, two of the group approached Todd and asked for a ride. *Id.* at 472. Todd agreed, and the three gang members entered the backseat of the Bagleys' car. *Id.* After giving Todd directions, Vialva pulled a handgun on Todd, Sparks pulled another gun on Stacie, and Vialva stated that "the plans have changed." *Id.* The trio then robbed the Bagleys, forced the Bagleys into the trunk of their car, and drove around in the car

for several hours attempting to empty the Bagleys' bank accounts from multiple ATMs and pawn Stacie's wedding ring. *Id.*

While locked in the trunk, the Bagleys spoke to Lewis and Sparks through the car's rear panel, discussing their faith and explaining that God's blessings were available to anyone. 299 F.3d at 472. Afterward, Sparks told Vialva that he no longer wanted to go through with the crime, but Vialva "insisted on killing the Bagleys and burning their car to eliminate the witnesses" and any incriminating fingerprints. *Id.* Vialva drove to his home, where he retrieved a ski mask and clothing. *Id.* The Bagleys pleaded with Vialva's accomplices for their lives. *Id.*

After Bernard and Brown rejoined the group, "Vialva repeated that he had to kill the Bagleys because they had seen his face." 299 F.3d at 472. Bernard and Brown then set off to purchase fuel to burn the Bagleys' car. *Id.* Sparks, who had expressed his desire to discontinue the crime, went home. *Id.* at 472 n.3.

Vialva, Bernard, Brown, and Lewis then drove the Bagleys' car (with the Bagleys still in the trunk) and Bernard's car to a remote location on the Fort Hood military installation. 299 F.3d at 472–73. Bernard helped pour lighter fluid in the Bagleys' car, while the Bagleys sang and prayed in the trunk. *Id.* at 472. Stacie said, "Jesus loves you" and "Jesus, take care of us." *Id.* Vialva replied, "Shut the fuck up, bitch, I'm about to open the trunk and I don't want to hear that shit." ECF No. 312 at 225.[1] He then put on his mask, ordered the trunk opened, and shot the Bagleys. *Id.* at 472–73. Vialva shot Todd in the head at close range, killing him instantly. But his shot to the side of Stacie's face merely knocked her unconscious. *Id.* Bernard then set fire to the car, killing Stacie, who died of smoke inhalation. *Id.* at 473.

---

[1] Citations to the Western District of Texas record refer to the assigned Electronic Case Filing (ECF) number for filed documents in Case No. 6:99-CR-00070-ADA.

The gang's escape was foiled when Bernard's car slid off the road into a muddy ditch 50 yards away from the Bagley's burning car. People responding to the fire saw the gang members hastily throwing items into a wooded area beside the road; law enforcement officers would later find the murder weapon, the second gun, cans of lighter fluid, and other evidence in that area. ECF No. 314 at 209–12; ECF No. 312 at 49, 76–88; ECF No. 311 at 41, 60–62, 89–92. The four men were arrested after first responders discovered the Bagleys' charred bodies in the car's trunk. 299 F.3d at 473.

## II.    Vialva's Trial and Sentencing

Vialva and Bernard were charged with carjacking resulting in death, in violation of 18 U.S.C. § 2119; conspiracy to murder the Bagleys, in violation of 18 U.S.C. §§ 1111, 1117; and murdering the Bagleys within the special maritime and territorial jurisdiction of the United States, in violation of 18 U.S.C. § 1111.[2] ECF No. 170; 299 F.3d at 473. The government gave notice that it would seek the death penalty against Vialva and Bernard on the carjacking and murder charges. *See* ECF Nos. 145, 174; 299 F.3d at 473.

Vialva and Bernard were tried jointly. Brown and Lewis testified at the trial, detailing the events surrounding the carjacking and murders. ECF No. 312 at 143–252; ECF No. 314 at 128–260. Jurors also heard testimony from law enforcement officers and others who responded to the scene of the arson. *See generally* ECF No. 311; ECF No. 312 at 3–143. They heard from the manager of the pawn shop where Vialva had unsuccessfully attempted to pawn Stacie's wedding ring in the hours after the carjacking. ECF No. 315 at 3–7. In addition, they heard from forensic witnesses, including an arson investigator, the medical examiners who performed

---

[2] Brown and Lewis pleaded guilty to related offenses. *See* No. 6:99-cr-00061-SS, ECF Nos. 6, 8 (W.D. Tex. Dec. 16, 1999) (plea agreements).

autopsies on Todd and Stacie Bagley, and a criminalist who linked Vialva to DNA evidence found on a mask in Bernard's car. ECF No. 313 at 10–14, 19–21, 66–82, 87–99, 106–37; ECF No. 312 at 52. Following the six-day trial, the jury found Vialva and Bernard guilty on all counts. ECF No. 316 at 115–16.

After the guilt phase, a joint hearing was held to determine whether Vialva and Bernard should receive the death penalty for the three capital crimes. ECF Nos. 317–19. Following that hearing, the jury unanimously and beyond a reasonable doubt found several statutory aggravating factors for each capital count: 1) that Vialva's crimes were especially heinous, cruel, or depraved; 2) that he committed those crimes for the purpose of pecuniary gain; 3) that he committed the crimes after substantial planning and premeditation; and 4) that he intentionally killed more than one person in a single criminal episode. ECF No. 286 at 3–4; *see* 18 U.S.C. § 3592(c) (listing statutory aggravating factors). Additionally, the jurors unanimously and beyond a reasonable doubt found as non-statutory aggravating factors that Vialva was likely to commit future acts of violence; that his offenses had caused injury, harm, and loss to the victims' families; and that he had murdered the Bagleys in order prevent them from providing information to police. ECF No. 286 at 5; 299 F.3d at 484.

Ten jurors found Vialva's abusive and deprived childhood to constitute a mitigating factor. ECF No. 286 at 3–7. None found that his age at the time of the murders (19) was a mitigating factor. *Id.* Weighing all the aggravating factors against the mitigating factors found by individual jurors, the jury unanimously recommended that Vialva be sentenced to death on each of the three capital counts. *Id.* at 12. The district court then imposed that sentence for those counts. ECF No. 289.

### III.    Post-Trial Proceedings

#### A.    Direct Appeal

In his direct appeal to the Fifth Circuit, Vialva challenged his conviction and sentence on nine grounds, including a claim that his death sentence violated the Eighth Amendment because the jury arbitrarily found that his age was not a mitigating factor. *Bernard*, 299 F.3d at 473–74. Meanwhile, in the consolidated appeal, Bernard challenged the constitutionality of his own death sentence under *Ring v. Arizona*, 536 U.S. 584 (2002), arguing that the indictment did not allege the mental state and statutory aggravating factors required by the Federal Death Penalty Act. 299 F.3d at 488–89.

The Fifth Circuit rejected these arguments and affirmed Vialva's conviction and sentence, 299 F.3d at 471, and the Supreme Court denied his petition for a writ of certiorari, 539 U.S. 928 (2003).

#### B.    Section 2255 Proceedings

In 2004, Vialva filed a motion to vacate his sentence under 28 U.S.C. § 2255. ECF No. 372. His 175-page motion raised multiple claims, *see id.*, for which he submitted more than 900 pages of exhibits. *See* ECF No. 373, 374.

As relevant here, Vialva argued that the district court failed to comply with the statutory procedure for the appointment of counsel in capital cases, *see* 18 U.S.C. § 3005, because it never consulted with the district's Federal Public Defender (FPD) before appointing Vialva's two trial counsel. ECF No. 372 at 41–51. Vialva also contended that one of his trial counsel operated under a conflict of interest in violation of his Sixth Amendment right to effective assistance of counsel; that his counsel provided ineffective assistance during the guilt phase of the trial by failing to challenge the indictment under *Ring*; and that his counsel provided ineffective assistance during the penalty phase of the trial by failing to develop mitigation evidence and counter the government's allegations of future dangerousness. *Id.* at

51–79, 151–97; ECF No. 428 at 7–9. Vialva further asserted that his execution would violate the Eighth Amendment under *Roper v. Simmons*, 543 U.S. 551 (2005), because, although he was an adult when he murdered the Bagleys, he had the "mental age" of a juvenile. ECF Nos. 429, 429-1; ECF No. 449 at 12.

The district court issued a 63-page order in which it determined that each of Vialva's claims lacked merit. ECF No. 449. The court first rejected Vialva's § 3005 challenge. It found that Vialva was procedurally barred from raising that claim because he could have raised it on direct appeal and had not met the standard that would allow him to raise it for the first time on collateral review. *Id.* at 14. Alternatively, the court found that its own failure to confer with the FPD before assigning counsel was not a constitutional violation and did not prejudice Vialva in any way. *Id.* at 16. The court explained that it had appointed attorney Dwight Goains as second counsel for Vialva due to his "extensive state court experience in capital cases,"[3] and that Vialva could not show that strict compliance with § 3005 would have resulted in a different attorney being appointed or a different sentencing outcome, given that "the guilt of the Defendants was so obvious, and the facts of the offense [were] so heinous." *Id.* at 17–18.

Next, the district court rejected Vialva's conflict-of-interest claim under *Strickland v. Washington*, 466 U.S. 668 (1984). ECF No. 449 at 32–35. Vialva had two lawyers at trial, including Goains. ECF Nos. 4, 29. Three months before trial, Goains unsuccessfully applied for a position with the U.S. Attorney's Office. ECF No. 449 at 32; ECF No. 373 at 74. Goains then sent a letter to the U.S. Attorney's Office expressing continued interest. ECF No. 449 at 32. Before trial, Goains

---

[3] As Vialva correctly points out (at Pet. 27), the FPD in the Western District of Texas—a vast geographic region that covers 92,000 square miles and comprises seven divisions—had no presence in the Waco Division during Vialva's prosecution and did not begin accepting appointments in that division until two decades later.

informed Vialva of his interest in a position with the U.S. Attorney's Office, and Vialva agreed to waive any potential conflict. *Id.* Goains also requested a pretrial hearing before the district court, at which he informed the district court of his continued interest in a position at the U.S. Attorney's Office. *Id.* at 32–33; ECF No. 321 at 4–5. The district court conducted a colloquy with Vialva, and Vialva confirmed his waiver of any conflict and desire to continue with Goains as one of his attorneys. ECF No. 449 at 33; *see also* ECF No. 321 at 5–6. After the trial, Goains withdrew as Vialva's counsel and then sought and accepted employment at the U.S. Attorney's Office. ECF No. 449 at 33.

As an initial matter, the district court stated that Vialva was procedurally barred from raising a Sixth Amendment claim based on Goains's alleged conflict because he could have raised that claim on direct appeal and had not met the standard that would allow him to raise it for the first time on collateral review. ECF No. 449 at 14. In any event, the court concluded that, based on the undisputed facts, Vialva had failed to establish ineffective assistance of counsel. *Id.* at 32–35. The court explained that no actual conflict of interest existed because Goains was neither offered nor accepted employment from the U.S. Attorney's Office while serving as Vialva's counsel and that, even if such a conflict existed, Vialva explicitly waived that conflict during the pretrial hearing. *Id.*; *see Holloway v. Arkansas*, 435 U.S. 475, 483 n.5 (1978) (recognizing that a defendant may waive a conflict of interest). Even if Vialva's waiver was ineffective, the district court determined that Vialva suffered no prejudice because nothing in the record indicated that "the situation affected the adequacy of Goains' representation of Vialva." ECF No. 449 at 34. The court explained that Vialva's allegations did not show deficient performance but instead reflected "strategic decisions based upon limited funds and the experience of counsel." *Id.* at 35.

The court also rejected Vialva's claims that his counsel had been ineffective during the penalty phase of the proceedings. ECF No. 449 at 50–64. As relevant here, the court rejected Vialva's claim that his counsel was ineffective by failing to present mitigating evidence and to defend adequately against the government's future-dangerousness arguments. *Id.* at 52, 54–59, 62. The court noted that Vialva's counsel secured the services of a mitigation expert and also "presented expert psychological evidence," including the testimony of Dr. Mark Cunningham, a forensic psychologist who testified longer than any other witness during the penalty phase. *Id.* at 52, 54; *see* 299 F.3d at 487 n.19. Dr. Cunningham's testimony underscored various risk factors that may have mitigated Vialva's culpability, including his home life, his mother's problems, his family's history of criminal behavior and substance abuse, and his alleged cognitive impairments. *Id.* at 57. Dr. Cunningham also presented statistical models to counter testimony from a government witness suggesting that Vialva would likely be dangerous in the future. *Id.* at 58.

Vialva contended that additional experts would have discovered 13 additional types of evidence (including Vialva's "symptoms of bi-polar disorder"). ECF No. 449 at 55. Considering the testimony presented by Dr. Cunningham and other witnesses on Vialva's behalf, the district court concluded that "the vast majority of information" Vialva identified "was presented to [the jury] during the punishment phase" and that counsel made strategic choices about whether to put on additional evidence. *Id.* at 58. For example, the court explained that if Vialva's counsel had "introduced even more evidence of mental and/or brain disorders, the jury could very well have concluded" that Vialva "would continue to be a danger to others" even if incarcerated. *Id.* at 58–59.

The court further concluded that Vialva did not establish prejudice stemming from the alleged failure of his counsel to present additional mitigating evidence

during the penalty phase. ECF No. 449 at 59. The court explained that the evidence against Vialva was "overwhelming": he was "the ringleader of the operation," he "decided that the Bagleys had to be killed," he "decided to burn the vehicle," and he "mercilessly shot the Bagleys in the heads after they begged for their lives." *Id.* Further, Vialva "had a history of violence": he was affiliated with "a violent street gang," he had "committed dozens of burglaries," and he once stood by while "other gang members . . . murdered a man." *Id.*

Finally, the court rejected Vialva's argument that his death sentence violated the Eighth Amendment due to his "mental age" because "[t]here is no legal basis for [his] argument," which had already been rejected by many courts, including the Fifth Circuit. ECF No. 449 at 27–28 (citing *Parr v. Quarterman*, 472 F.3d 245, 261 (5th Cir. 2006), and additional cases). "As the claim has no merit," the court further found Vialva's counsel were not ineffective in failing to raise it at trial. *Id.* at 28.

The Fifth Circuit denied Vialva's application for a COA. *United States v. Bernard*, 762 F.3d 467, 470 (5th Cir. 2014). It explained at the outset that under *Miller-El v. Cockrell*, 537 U.S. 322 (2003), its examination was "limited to a 'threshold inquiry,' which consists of 'an overview of the claims in the habeas petition and a general assessment of their merits,'" to determine whether "'jurists of reason could disagree with the district court's resolution of [Vialva's] constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" 762 F.3d at 471 (quoting *Miller-El*, 537 U.S. at 327, 336). Under that standard, the court explained, "[t]his court cannot deny a COA merely because it believes that Vialva [] ultimately will not prevail on the merits of [his] claims." *Id.* Rather, it wrote, "[a] claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that Vialva will not prevail." *Id.* (quoting *Miller-El*, 537 U.S. at 338). The court added that because Vialva was a capital defendant, "any

doubts as to whether a COA should issue must be resolved in [his] favor." *Id.* (quoting *Ramirez v. Dretke*, 398 F.3d 691, 694 (5th Cir. 2005)).

After thoroughly reviewing the record, the Fifth Circuit determined that the district court was not even debatably wrong in rejecting Vialva's claims. First, the court of appeals concluded that reasonable jurists would not disagree about whether Vialva's attorneys performed ineffectively during the guilt phase. 762 F.3d at 476–78. The court of appeals noted that Vialva's claims "covered nearly every aspect of counsels' representation before and during the guilt and penalty phases of the trial," even though Vialva's attorneys were experienced criminal defense lawyers, *id.* at 472, and it concluded in each instance that reasonable jurists could not debate the district court's conclusions. The court noted the district court's conclusions that Vialva's conflict-of-interest claim was procedurally barred and that Vialva had waived any conflict, and it observed that Vialva "ma[de] no attempt in this court to demonstrate prejudice." *Id.* at 476–77.

Likewise, the court of appeals concluded that no COA was warranted on Vialva's claim of ineffective assistance at the penalty phase. 762 F.3d at 478–80. The court noted the district court's conclusions that "much of the mitigating evidence was actually presented to the jury through the testimony of Vialva's friends and family and Dr. Cunningham," *id.* at 479 (recounting record evidence), and that Vialva failed to prove prejudice, *id.* The court of appeals held that "[r]easonable jurists could not debate" the district court's conclusions, *id.*

The Fifth Circuit further found that reasonable jurists could not disagree with the district court's conclusion that Vialva's execution would not violate the Eighth Amendment based on his "mental age" at the time of the murders. 762 F.3d at 482–83. The court agreed with the district court that *Roper* did not apply and that Vialva's argument was contrary to precedent. *Id.* (citing *Parr*, 472 F.3d at 261, and *In re Garner*, 612 F.3d 533, 535–36 (6th Cir. 2010)).

The court of appeals further concluded that no evidentiary hearing was required. 762 F.3d at 483. It explained that "an evidentiary hearing is required '[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *Id.* (quoting § 2255(b)). Here, the court explained, for the reasons it had provided in its claim-by-claim analysis, there was no "abuse of discretion [in] the district court's decision to deny" an evidentiary hearing. *Id.* (citing *United States v. Hall*, 455 F.3d 508, 523 (5th Cir. 2006)). The Supreme Court denied certiorari. *Vialva v. United States*, 136 S. Ct. 1155 (2016).

### C.   Rule 60(b)(6) Proceedings

In 2017, Vialva filed a motion under Rule 60(b)(6), seeking relief from the district court's judgment denying his § 2255 motion.[4] ECF No. 553. He claimed that U.S. District Judge Walter Smith, who had presided at trial and ruled on Vialva's § 2255 motion, had been unfit to preside over the § 2255 proceedings because recent public revelations about Judge Smith's personal and professional conduct showed that he "suffer[ed] from impaired judgment."[5] *Id.* at 18–19.

---

[4] At the time, the case had been reassigned to U.S. District Judge Lee Yeakel. ECF No. 507.

[5] In 2015, the Fifth Circuit Judicial Council reprimanded Judge Smith based on its finding that, in 1998, he sexually harassed a court employee and failed to understand the gravity of that behavior and the serious effect that it had on court operations. ECF No. 553-46 at 1–2. The Council also reprimanded the judge for allowing others to make "false factual assertions" on his behalf during the 2014 judicial misconduct proceedings. *Id.* at 2. For those actions, the Council suspended the assignment of new cases to Judge Smith for one year and directed him to complete sensitivity training. *Id.* The Judicial Council also separately determined that Judge Smith did not follow appropriate recusal procedures in cases in which the attorney who represented him in the misconduct proceedings also appeared in his court. ECF No. 553-46 at 3 & n.1. The Council directed Judge Smith to recuse himself from any case in which his counsel appeared. *Id.* at 3. In 2016, while the Council was still investigating additional sexual harassment allegations against him, Judge Smith retired and the Judicial Council determined that further action on the misconduct complaint was unnecessary. ECF No. 553-46 at 12.

Vialva asserted that Judge Smith violated his due process rights by denying his § 2255 motion without "plenary examination," which Vialva attributed to the judge's "impairments." ECF No. 553 at 2–3, 18. Vialva further asserted that the Fifth Circuit had compounded this defect and denied "appropriate review" by using an "erroneous construction of the [COA] standard." *Id.* at 3, 6–10, 12. Vialva then reargued his various § 2255 claims to support his assertion of the judge's impairment. *Id.* at 13–18; *see id.* at 11 n.39, 17 n.56 (citing 125 pages of prior legal arguments filed as appendices). He attached more than 600 pages of materials to his Rule 60(b)(6) motions, the vast majority of which had been previously filed with his original § 2255 motion and which were resubmitted to support assertions that Judge Smith had erred in rejecting Vialva's § 2255 claims. *Compare id. with* ECF No. 372 at 3–41, 60–144 (original arguments); ECF Nos. 373, 374 (original exhibits).

The district court (Judge Yeakel) dismissed Vialva's Rule 60(b)(6) motion for lack of jurisdiction as an uncertified successive § 2255 motion. ECF No. 570. The court explained that although Vialva framed his motion as "an attack on a procedural defect in prior habeas proceedings"—that is, "the denial of 'meaningful review of potentially meritorious claims' by both the district court and Fifth Circuit"—Vialva's arguments were "substantive rather than procedural," as reflected by his reargument of the merits of numerous claims from his § 2255 motions. *Id.* at 4–5 & n.3. The district court accordingly determined that Vialva's motions reflected "disagree[ment] with the result of the previous proceedings" and ultimately constituted "successive Section 2255 motions." *Id.* at 5. The court declined to issue a COA, because "reasonable jurists could not debate the denial or dismissal of [his motion] on substantive or procedural grounds." *Id.* at 6.

The Fifth Circuit likewise denied a COA. *United States v. Vialva*, 904 F.3d 356, 358 (5th Cir. 2018), *cert. denied*, 140 S. Ct. 860 (2020). Applying the Supreme Court's decision in *Gonzalez v. Crosby*, 545 U.S. 524, 532 (2005), the court of appeals

held that the district court was correct to construe the Rule 60(b)(6) motion as a successive motion under § 2255 because Vialva attempted to use "unrelated misconduct by Judge Smith" that "cast no doubt on th[e] [§ 2255] proceedings' integrity" to pave the way for "substantive 'attacks [on] the federal court's previous resolution'" of his § 2255 claims. 904 F.3d at 363 (quoting *Gonzalez*, 545 U.S. at 532).

With respect to Vialva's "invocation of defective procedure" to attack the integrity of his prior § 2255 proceedings before Judge Smith, the Fifth Circuit reasoned that his motion "rests substantially on a merits-based challenge." 904 F.3d at 361. Vialva's evidence about Judge Smith, the court stated, "does not credibly implicate the procedural integrity" of prior proceedings in the case: "Evidence that Judge Smith engaged in unrelated misconduct in 1998" or "neglected certain recusal requirements during the 2014 misconduct investigation" raises no "inference of defects in the habeas proceedings at issue here." *Id.* The court further noted that Vialva had "offer[red] no evidence—beyond gross speculation—that Judge Smith was, as [Vialva] repeatedly assert[s], 'impaired' or 'unfit' to oversee" his case. *Id.* Vialva instead "clearly [presented] merits-based attacks," because he "spent much of [his] Rule 60(b)(6) motions rearguing the merits of [his § 2255] claims" in an effort to "point to errors allegedly committed by Judge Smith" and thereby "to link Judge Smith's misconduct to [his] own proceedings." *Id.* at 362. That effort "to transform these previously unsuccessful merits-based claims into a claim of procedural defect," the court reasoned, was the "sort of attack [on] the federal court's previous resolution of . . . claims[s] on the merits" that *Gonzalez* rejects as a successive habeas petition. *Id.* (quoting *Gonzalez*, 545 U.S. at 532).

The Fifth Circuit also found no basis for a COA on Vialva's claim that it had "misapplied the COA standard" when it declined to issue a COA in his § 2255 proceedings. 904 F.3d at 362. The court of appeals addressed Vialva's reliance on

*Buck v. Davis*, 137 S. Ct. 759 (2017), which reversed "a different panel of [the Fifth Circuit]" for "failing to limit its COA review" to "whether the district court's decision was 'reasonably debatable.'" 904 F.3d at 362 (quoting *Buck*, 137 S. Ct. at 774). The court observed that Vialva "fail[ed] to explain how the error present in *Buck* was also present in this court's application of the COA standard in their proceedings." *Id.* Moreover, the court continued, Vialva's contention was "'fundamentally substantive'" because he "merely argue[d] that the district court's disposition of [his] Section 2255 motions was, in fact, debatable by jurists of reason," an argument that Vialva made in prior proceedings and presented in his 2015 certiorari petition, "which w[as] denied by the Supreme Court." *Id.* (citation omitted).

Vialva sought certiorari review of the Fifth Circuit's decision, which the Supreme Court denied. 140 S. Ct. 860 (2020).

## IV.    Vialva's Current Habeas Petition

More than seven months after the denial of Vialva's most recent certiorari petition, the government notified Vialva that his execution was scheduled for September 24, 2020. ECF No. 673. Ten days later, Vialva filed this habeas petition in which he recycled the same § 3005, ineffective-assistance, and Eighth Amendment claims that were previously rejected during his § 2255 proceedings. *Compare* Petition 12–115 *with* ECF Nos. 372, 428, 429, 553; *see also* ROA.416, 569; 299 F.3d at 488; 762 F.3d at 467, 482. According to Vialva, § 2255 was inadequate and ineffective to raise those claims due to Judge Smith's "impairments" during the trial and post-conviction proceedings and the "unconstitutionally cramped Fifth Circuit process for obtaining a [COA]." Pet. 19–25.

## LEGAL STANDARD

"As a general rule, a federal prisoner wishing to collaterally attack his conviction or sentence must do so under [28 U.S.C.] § 2255." *Chazen v. Marske*, 938 F.3d 851, 856 (7th Cir. 2019). Congress has placed strict limitations on a federal

prisoner's ability to bring a § 2255 action. First, such an action can only be brought in the court which imposed the sentence. § 2255(a). Second, a federal prisoner is limited to bringing one § 2255 motion, unless the court of appeals for the district where the action is filed determines that a second-or-successive motion is based on either (1) persuasive new evidence that the prisoner was factually not guilty of the offense or (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable. § 2255(h).

Section 2255 contains a "Saving Clause" that creates a narrow exception to the "general rule" requiring a federal prisoner to bring a collateral attack under § 2255. *See, e.g., Boumediene v. Bush*, 553 U.S. 723, 776 (2008). Under the Saving Clause, district courts "shall not . . . entertain[]" a federal prisoner's petition for a writ of habeas corpus under 28 U.S.C. § 2241 except in cases where § 2255 was shown to be "inadequate or ineffective to test the legality of [the prisoner's] detention." § 2255(e). "The petitioner bears the burden of coming forward with evidence affirmatively showing the inadequacy or ineffectiveness of the § 2255 remedy." *Jahns v. Julian*, 305 F. Supp. 3d 939, 943 (S.D. Ind. 2018) (citation omitted); *accord Prevatte v. Merlak*, 865 F.3d 894, 900 (7th Cir. 2017); *Robinson v. United States*, 812 F.3d 476, 477 (5th Cir. 2016). When a petitioner fails to carry this burden, the Saving Clause does not apply and a petition under § 2241 should be dismissed with prejudice. *Prevatte*, 865 F.3d at 900–01.[6]

---

[6] In the government's view, the Saving Clause is jurisdictional. *See United States v. Wheeler*, 886 F.3d 415, 424–25 (4th Cir. 2018), *cert. denied*, 139 S. Ct. 1318 (2019). The Seventh Circuit has held that the Saving Clause is not jurisdictional, but that the failure to meet its standards requires dismissal with prejudice. *See, e.g., Prevatte*, 865 F.3d at 901; *see also Cordaro v. United States*, 933 F.3d 232, 240 n.2 (3d Cir. 2019) (explaining that "[o]nly the Seventh Circuit Court of Appeals has held that § 2255(e) is not jurisdictional").

## ARGUMENTS

The Saving Clause in 28 U.S.C. § 2255(e) forecloses Vialva from raising his unsuccessful claims anew in a habeas petition under 28 U.S.C. § 2241. Section 2255 was not "inadequate or ineffective" to raise those claims. On the contrary, Vialva asserted those same claims in his § 2255 proceedings and the district court addressed them on the merits. And even if the Saving Clause did not foreclose Vialva's petition, his claims are meritless.

## I.    Vialva Cannot Use a Habeas Petition Under 28 U.S.C. § 2241 to Relitigate Constitutional Claims That Were Already Raised and Rejected on the Merits During His § 2255 Proceedings.

Section 2255 provides the exclusive vehicle for federal prisoners to challenge their conviction or sentence on collateral review unless § 2255 is "inadequate or ineffective to test the legality of [their] detention." 28 U.S.C. § 2255(e). Vialva's claims do not fall within that narrow exception, and therefore his habeas petition must be dismissed with prejudice.

Vialva's previously litigated constitutional claims do not fall within the narrow categories of habeas claims that the Seventh Circuit has concluded are permitted by the Saving Clause. The Circuit has decided three "central" cases applying the Saving Clause. *Purkey v. United States*, 964 F.3d 603, 611 (7th Cir.), *reconsideration denied*, 812 F. App'x 380 (7th Cir.), *cert. denied*, No. 20-26, 2020 WL 4006838 (July 16, 2020). First, in *In re Davenport*, 147 F.3d 605 (7th Cir. 1998), the court concluded that the Saving Clause permits a habeas petition that raises a claim of fundamental statutory error in a federal defendant's conviction or sentence (such as a conviction for conduct that is not criminal) that could not have been asserted in the defendant's first § 2255 proceedings, but is later made viable by an intervening decision of statutory interpretation. Second, in *Garza v. Lappin*, 253 F.3d 918, 921–23 (7th Cir. 2001), the Court—finding the circumstances "closely analogous" to those in *Davenport*—concluded that the Saving Clause permitted a

habeas petition asserting that the United States was bound by treaty to follow an international tribunal decision that determined the defendant's death sentence was illegal, a claim that it deemed "literally impossible" for the defendant to raise on direct appeal or in his § 2255 motion because the international tribunal's decision was not available at that time. Third, in *Webster v. Daniels*, 784 F.3d 1123, 1135–44 (7th Cir. 2015) (en banc), the Court allowed a federal defendant to use a § 2241 habeas petition to raise a claim of categorical ineligibility for the death penalty (because of age or intellectual disability) based on newly discovered evidence that existed at the time of his trial, but was unavailable despite diligence by the defense.[7]

While these cases do not create "rigid categories delineating when the [Saving Clause] is available," *Purkey*, 964 F.3d at 614, the Seventh Circuit's precedent "holds unambiguously" that a § 2241 petition may not proceed under the Saving Clause "absent 'a compelling showing' that it was 'impossible' to use § 2255 to cure the defect identified in the § 2241 petition." *Lee v. Watson* ("*Lee II*"), 964 F.3d 663, 666 (7th Cir.), *cert. denied*, No. 20-5032, 2020 WL 3964235 (July 14, 2020). At a minimum, "there must be something 'structurally inadequate or ineffective about section 2255 as a vehicle' for the arguments raised in the § 2241

---

[7] The government believes that the Seventh Circuit's cases applying the Saving Clause—including *Davenport*, *Garza*, and *Webster*—were wrongly decided. The government agrees with the reasoning of the Tenth Circuit's decision in *Prost v. Anderson*, 636 F.3d 578 (10th Cir. 2011) (Gorsuch, J.), the Eleventh Circuit's en banc decision in *McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc.*, 851 F.3d 1076 (11th Cir. 2017) (en banc), and the dissent in *Webster*, 784 F.3d at 1146-54 (Easterbrook, J., dissenting), which concluded that the Saving Clause does not permit a defendant to challenge his conviction or sentence in a § 2241 habeas petition. *See* Pet. for a Writ of Cert., *United States v. Wheeler*, 139 S. Ct. 1318 (cert denied 2019) (No. 18-420), 2018 WL 5017116. The government recognizes that binding Seventh Circuit precedent forecloses this argument but notes the government's position to preserve the issue for further appellate review if warranted.

petition." *Id.* (quoting *Purkey*, 964 F.3d at 615). That is, "the words 'inadequate or ineffective,' taken in context, must mean something more than unsuccessful." *Purkey*, 964 F.3d at 615.

Vialva does not satisfy this standard. As explained, Vialva raises four claims in his § 2241 petition:

- First, that the district court's failure to strictly comply with the requirements for assigning counsel set forth in 18 U.S.C. § 3005 violated his Sixth Amendment right to effective assistance of counsel and deprived him of due process (Pet. 12–22);

- Second, that one of his counsel was operating under a conflict of interest that violated Vialva's right to effective assistance (*id.* at 22–48);

- Third, that his counsel provided ineffective assistance during the penalty phase of his trial (*id.* at 48–93); and

- Fourth, that his death sentence violates the Eighth Amendment under *Roper*, 543 U.S. at 578, because his "mental age" when he committed his crimes fell short of his actual age of 19 (*id.* at 94–101).

Vialva identifies no structural or other legal impediment to raising those claims in his earlier § 2255 motion. On the contrary, Vialva *did* raise those same constitutional claims during his § 2255 proceedings. *See* ECF No. 372 at 41–51 (§ 3005 appointment-of-counsel claim); *id.* at 51–79 (conflict-of-interest claim); *id.* at

144–82 (ineffective assistance at penalty phase); ECF 429 (*Roper* claim).[8] The district court addressed the merits of each of these claims and denied the motion. *See* ECF No. 449 at 10–12, 15–18, 27–40, 50–62. The Fifth Circuit denied a COA, concluding that reasonable jurists would not disagree with the district court's resolution of those claims. 762 F.3d at 470. Absent an intervening and retroactive change in governing law, a federal prisoner cannot relitigate a claim under § 2241 that was actually resolved in a proceeding under § 2255. *Roundtree v. Krueger*, 910 F.3d 312, 313 (7th Cir. 2018). The Saving Clause therefore does not allow Vialva to use a § 2241 habeas petition to relitigate these same claims in a different court, hoping for a better result. *See Webster*, 784 F.3d at 1136 ("[S]omething more than a lack of success with a section 2255 motion must exist before the savings clause is satisfied.").

Seeking to bulldoze the "narrow pathway" to § 2241 permitted by the Saving Clause, *see Purkey*, 964 F.3d at 611, Vialva argues that he may reassert his previously litigated claims due to case-specific circumstances that he thinks deprived him of meaningful review of those claims. Pet. 5, 10–11. Specifically, he argues that Judge Smith's "impairments" rendered the judge unfit to adjudicate Vialva's § 2255 claims in 2012, *id.* at 5–8, entitling Vialva to another opportunity to present those claims here, *id.* at 10–11. That argument is incorrect for two reasons.

---

[8] Although the arguments in Vialva's petition are nearly identical to the ones he presented to the district court in his § 2255 motion, Vialva also cannot use § 2241 to raise any additional allegations in support of previously-rejected claims. The Seventh Circuit has held that § 2255 is not inadequate or ineffective when "nothing formally prevented [the petitioner] from raising each of" those additional allegations. *Purkey*, 964 F.3d at 615. For example, because Vialva already raised a Sixth Amendment ineffectiveness claim in his earlier § 2255 motion—"even if the specific details of the ineffective performance are different"—this Court "must dismiss a new claim of ineffective assistance of the same lawyer." *Purkey*, 964 F.3d at 615–16 (citing *Strickland*, 466 U.S. at 695).

First, Vialva was never deprived of meaningful review of his § 2255 claims. As the Fifth Circuit already held while evaluating those same allegations, there was no basis to infer that Judge Smith was unable to resolve the criminal-law questions presented in Vialva's § 2255 motions in 2012, 14 years after the judge engaged in unrelated misconduct and two years before the investigation into that misconduct began. 904 F.3d at 361. Vialva offered no evidence "beyond gross speculation" that Judge Smith was impaired or unfit to oversee his trial or § 2255 proceedings. *Id.* In any event, after independently reviewing each of Vialva's claims and resolving all doubts in his favor, the Fifth Circuit found that reasonable jurists would not disagree with Judge Smith's disposition of Vialva's claims. 762 F.3d at 471–83. Vialva's theory of judicial incapacity—based on events untethered to his own case— does not establish that it was impossible to use § 2255 to test his claims.

Second, even if Vialva could make a more compelling showing as to Judge Smith's purported impairment, Vialva's petition is still barred by the Saving Clause because there was nothing *structurally* inadequate or ineffective with § 2255 as a vehicle for his ineffective-assistance and Eighth Amendment claims. Where a prisoner was not structurally or legally foreclosed from raising a challenge to his conviction and sentence under § 2255—and especially where the prisoner actually *did* raise such a challenge—§ 2255 is not "inadequate or ineffective." *See Purkey*, 964 F.3d at 616–17. Vialva's fact-based challenge to Judge Smith's resolution of his claims does not call into question the adequacy or effectiveness of § 2255 as a mechanism of postconviction review. Section 2255 is simply not "inadequate or ineffective" to present claims that Vialva actually presented, and on which he received a plenary decision on the merits that was upheld on appellate review and on which the Supreme Court denied certiorari.

Equally unavailing is Vialva's claim (at Pet. 8–10) that the Fifth Circuit's COA review process for § 2255 petitions renders the § 2255 vehicle structurally

inadequate or ineffective. Vialva litigated his claims and lost in the Fifth Circuit. The U.S. Supreme Court, not a district court in another circuit, is the proper forum for his argument that the Fifth Circuit erred in reviewing his COA applications. *Roundtree*, 910 F.3d at 314. Indeed, Vialva petitioned for certiorari as to the Fifth Circuit's decision, arguing (as he does here) that the court of appeals erred under *Buck* when it applied an "erroneous," "outcome-based" and "unreasonably demanding standard" when it denied his application for a COA. *See* Pet. for a Writ of Cert., *United States v. Vialva*, 140 S. Ct. 860 (cert. denied 2020) (No. 18-1222), 2019 WL 1294672. The Supreme Court denied certiorari. 140 S. Ct. 860. Vialva cannot use the Saving Clause and § 2241 to sidestep that result.

Finally, there is no danger that disallowing Vialva's habeas claims will violate the Suspension Clause. *See* Pet. 25–26. Vialva had the opportunity to—and did—raise his claims in his first § 2255 motion, and the Constitution does not require more. *Davenport*, 147 F.3d at 610. His petition should be dismissed with prejudice.

## II.   Vialva's Claims Lack Merit.

Section 2255(e) forecloses Vialva from raising the constitutional claims in his habeas petition regardless of the merits of those claims. But even if the Saving Clause permitted Vialva to raise those claims in his habeas petition, he would not be entitled to relief on the merits. For the reasons already explained by the district court and the Fifth Circuit in the § 2255 litigation, Vialva's claims fail.

### A.   The District Court's Failure to Comply with the Technical Requirements of § 3005 Did Not Deprive Vialva of the Assistance of Counsel.

There is no merit to Vialva's claim (at Pet. 12–22) that the district court's failure to strictly comply with the requirements for assigning counsel in 18 U.S.C. § 3005 violated his constitutional rights. Section 3005 requires that a district court, at the defendant's request, assign two counsel to those accused of capital crimes.

When assigning counsel under this section, § 3005 requires that the court "consider the recommendation of the Federal Public Defender." The purpose of securing the FPD's recommendation is to ensure the high-quality representation necessary in capital cases. *See United States v. Fields*, 483 F.3d 313, 348 (5th Cir. 2007) (citing *United States v. Shepherd*, 576 F.2d 719, 728–29 (7th Cir. 1978)). The failure to consult the FPD before appointing capital counsel is non-structural error does not warrant vacatur absent a showing of prejudice. *See id.* at 348; *cf. United States v. Williams*, 544 F.2d 1215, 1218 (4th Cir. 1976) (holding that "the right to two counsel granted by § 3005 is purely statutory and that § 3005 does not embody a fundamental constitutional right").

In this case, after the prosecutor notified Vialva that the government intended to seek the death penalty, Vialva's appointed counsel, Stanley Schwieger, filed a motion under § 3005 asking the court to appoint a second attorney. ECF No. 19. In his motion, Schwieger advised the court that Dwight Goains had been lead counsel in several state capital murder trials, that he was a board-certified criminal law practitioner, that Schwieger believed Goains was "learned in the law applicable to capital cases," and that Goains had agreed to be co-counsel. *Id.* at 4. Schwieger submitted Goains' name to the court "because [Goains] was the best trial lawyer in Waco, Texas." ECF No. 373 at 70. "[H]aving considered the motion" and "find[ing] that it ha[d] merit," the court granted Schwieger's motion and appointed Goains as co-counsel. ECF No. 29. Vialva made no objection to the court's decision to appoint Schwieger or Goains or to its failure to consult the FPD, nor did he raise any objection on direct appeal.

During the § 2255 proceeding, the district court correctly rejected Vialva's claim that the court's failure to consult with the FPD before assigning counsel violated his right to effective assistance of counsel. First, the court correctly found that Vialva procedurally defaulted on this claim by failing to raise it on direct

appeal. ECF No. 449 at 14. Second, as the district court recognized (at *id.* at 16–17), Vialva has never identified how the statutory error actually prejudiced him. *See* Pet. 36. Nor could he: as the Fifth Circuit observed, Vialva's trial "was far from the first rodeo" for either of his appointed counsel. 762 F.3d at 472. "Goains had extensive relevant death penalty case experience," having previously tried eight capital-murder cases, and was board-certified in criminal law, while Schwieger "was an experienced criminal defense attorney." *Id.*; ECF No. 19 at 4; ECF No. 321 at 3. Meanwhile, the FPD was headquartered 180 miles away in San Antonio and did not have any presence in the Waco Division. ECF No. 373 at 6. Under these circumstances, Vialva fails to show that his § 3005 claim has any merit.

### B.     Vialva Waived Any Potential Conflict of Interest, And He Was Not Prejudiced in Any Event.

While Vialva's case was pending, one of his attorneys, Dwight Goains, applied for a job at the U.S. Attorney's Office. ECF No. 449 at 32; ECF No. 373 at 71. Before trial, Goains obtained a waiver of conflict from Vialva and requested a hearing before the district court. ECF No. 449 at 32; ECF No. 373 at 71–72. At the hearing, Goains informed the court of his continued interest in a future position at the U.S. Attorney's Office. ECF No. 321 at 3–4. The court conducted a colloquy with Vialva, and Vialva confirmed his waiver of any conflict and his desire to continue with Goains as one of his attorneys. ECF No. 449 at 33; ECF No. 321 at 4–6. After the trial, Goains withdrew as Vialva's counsel, then sought and accepted employment at the U.S. Attorney's Office in the Alpine Division. ECF No. 449 at 33; ECF No. 373 at 72. Vialva did not raise any objection to Goains' representation at trial, nor did he raise any conflict-of-interest claim on direct appeal.

During the § 2255 proceedings, Vialva claimed that Goains had a conflict of interest that violated Vialva's right to effective counsel. ECF No. 372 at 51–79. The district court found that Vialva's claim was procedurally barred. ECF No. 449 at

13–14, 32. Alternatively, both the district court and the Fifth Circuit concluded that Vialva's claim was meritless because there was no actual conflict, he had waived any potential conflict, and he failed to establish prejudice under *Strickland*, 466 U.S. 668. ECF No. 449 at 34–35; 762 F.3d at 476–77.

In his § 2241 petition, Vialva once again contends (Pet. 22–48) that he received ineffective assistance of counsel due to Goains's purported conflict of interest. That claim lacks merit.

"A criminal defendant has an absolute right under the Sixth Amendment to be represented by an attorney who has no conflict of interest." *Holloway v. Arkansas*, 435 U.S. 475, 482 (1978). In the Seventh Circuit, there are two ways to assert a claim based on counsel's conflict of interest. First, under *Strickland*, 466 U.S. 668, the defendant may show that his attorney had a potential conflict of interest and that the potential conflict prejudiced his defense. *Stoia v. United States*, 22 F.3d 766, 770 (7th Cir. 1994). Second, the defendant may proceed under *Cuyler v. Sullivan*, 446 U.S. 335 (1980), where he must establish a violation "by showing that an actual conflict of interest adversely affected his lawyer's performance." *Id*. In the Fifth Circuit, the *Cuyler* standard governs conflicts that spring from multiple-client representation, while the *Strickland* standard governs all other conflicts. *United States v. Newell*, 315 F.3d 510, 516 (5th Cir. 2002) (citing *Beets v. Scott*, 65 F.3d 1258, 1265 (5th Cir. 1995)).

The *Strickland* standard applies in either circuit because no actual conflict existed. Although he expressed interest in a job with the U.S. Attorney's Office, Goains was not offered and did not accept such a position while he was representing Vialva. "The mere fact of [defense counsel's] future employment plans d[oes] not create an actual conflict." *Garcia v. Bunnell*, 33 F.3d 1193, 1199 (9th Cir. 1994) (citing cases). Further, Goains denied that his ability to represent Vialva would be impaired; he merely thought it appropriate to alert the court. ECF No. 321 at 4. As

the Seventh Circuit has explained, "[w]e will not indulge the presumption that a defense attorney who is being considered for a position as United States Attorney is unable to represent a defendant in federal court to the best of his ability and with the defendant's best interests in mind." *United States v. Horton*, 845 F.2d 1414, 1419 (7th Cir. 1988).

To the extent there was any potential conflict, Vialva waived his right to challenge his conviction on that basis. A defendant may waive the right to proceed with conflict-free counsel after a hearing before the trial court. *Holloway*, 435 U.S. at 483 n.5; *United States v. Jenkins*, 943 F.2d 167, 176 (2d Cir. 1991). To waive his right, the defendant must have "actual knowledge of the existence of the right or privilege, full understanding of its meaning, and clear comprehension of the consequence of the waiver." *Newell*, 315 F.3d at 519. At the hearing, Vialva was informed of the nature of the potential conflict, was informed of his option to request that new counsel be appointed to replace Goains, and was given an opportunity to make further inquiries to the court. ECF No. 321 at 4–6. Vialva acknowledged that he knew that his waiver would bar a future challenge to his conviction based on Goains's potential conflict. *Id.* at 6. Further, Vialva had a second attorney with no conflicts, from whom he could seek legal advice about the matter. Vialva still unambiguously expressed his "wish that [Goains] continue representing me." ECF No. 321 at 5. The district court correctly found that Vialva had validly waived any Sixth Amendment objection.

Even if Vialva had not waived the conflict, he fails to demonstrate that any conflict of interest prejudiced his defense. To show prejudice, Vialva must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Nothing in the record substantiates Vialva's claim that Goains's interest in a position at the U.S. Attorney's Office affected his performance, much less that it changed the result

of the trial. Vialva asserts that Goains failed to sufficiently cross-examine certain witnesses, retain records, or assist post-conviction counsel. Pet. 44-47. But even assuming Vialva were correct that Goains was using the trial to "continu[e] his interview" with the U.S. Attorney's Office, he never explains how that conflict led to those alleged deficiencies. Pet. 44. Indeed, if Goains's goal was to impress the government with his skills as a trial lawyer, he would have had an incentive to do a *better* job, not a worse one. And in any event, Vialva never explains how he was prejudiced, relying instead on perfunctory claims that prejudice was "pervasive" and "evident in the record." *See* Pet. 43, 47. He was similarly unable to identify any prejudice under *Strickland* during his § 2255 proceedings, in which the district court considered and rejected each of the same assertions he makes here. *See* ECF No. 449 at 35; 762 F.3d at 467 ("Vialva makes no attempt in this court to demonstrate prejudice."). As the district court explained, "[t]he guilt of the Defendants was so obvious, and the facts of the offense so heinous," ECF No. 449 at 18, that it is exceedingly unlikely that Goains's potential conflict—even if it existed and was not waived—affected the result of the proceedings.

### C.   Vialva Cannot Show *Strickland* Prejudice or Deficient Performance in the Penalty Phase of His Trial.

Under *Strickland v. Washington*, 466 U.S. 668 (1984), an ineffective-assistance claim has two components. First, the defendant must show that his counsel's performance was deficient by demonstrating that it "fell below an objective standard of reasonableness." *Id.* at 688. As a general matter, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Second, the defendant must "affirmatively prove prejudice" by showing a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 693-94. In his § 2241 petition, Vialva reasserts ineffective-assistance claims he

raised in his § 2255 motion. The district court issued extensive written findings rejecting these arguments. ECF No. 449 at 20–22, 50–62. This Court should reach the same result.

### 1.   Funding

Vialva first argues (Pet. 49-62) that his counsel failed to obtain adequate funding, which in turn resulted in a failure to develop and present mitigation evidence during the penalty phase. In fact, Vialva's counsel obtained funding throughout Vialva's trial. For example, during the guilt phase, his counsel filed a sealed motion that included a detailed proposed litigation budget, much of which the court approved. *See* ECF No. 449 at 42. When the court denied an additional funding request, counsel filed an *ex parte* writ of mandamus before the Fifth Circuit, resulting in a remand to the district court, which conditionally granted more funds. *Id.* at 43. Vialva's counsel approached the penalty phase in a similar manner. Counsel submitted a proposed budget, *see* Pet. 49-50, and ultimately retained Tena Francis, an investigator and mitigation specialist who assisted in preparing Vialva's mitigation case, ECF No. 449 at 54. Additionally, counsel retained Dr. Mark Cunningham, a forensic psychologist who provided a detailed scientific and statistical analysis to support Vialva's alleged mitigating factors and "testified longer than any witness during the penalty phase." ECF No. 449 at 54.

In any event, a narrow focus on the amount of funding available for experts sidesteps the relevant inquiry, which considers "not whether counsel should have presented a mitigation case," but instead "whether the investigation supporting counsel's decision not to introduce mitigating evidence of [the defendant's] background was itself reasonable." *Wiggins v. Smith*, 539 U.S. 510, 523 (2003). As the district court explained, those who testified on Vialva's behalf—principally Cunningham and Vialva's friends and family members—conveyed the substance of the information that Vialva now claims (Pet. 54–62) that his counsel overlooked. *See*

ECF No. 449 at 55–58 (witnesses testified that Vialva "got along with everybody" despite the fact that his "home life was marked by chaos and violence"; that Vialva's "emotional development was disrupted by" attention deficit hyperactivity disorder; and that Vialva suffered "emotional disturbances or psychological disorders, as well as head injuries").[9] Not only would additional funding to support experts have resulted in cumulative mitigation evidence, *see United States v. Harris*, 408 F.3d 186, 191 (5th Cir. 2005) (omitting "cumulative testimony" does not constitute deficient performance); *United States v. Jackson*, 935 F.2d 832, 845–46 (7th Cir. 1991) (same), that evidence may have backfired, leading the jury to conclude that Vialva "would continue to be a danger to others," ECF No. 449 at 59. Vialva's counsel did not perform unreasonably in choosing to forgo seeking additional funding to introduce any such evidence.

Vialva also fails to establish how his counsel's reasonable decision not to pursue additional funding prejudiced him. *See* ECF No. 449 at 59. As noted above, the evidence against Vialva, the "ringleader of the operation," was "overwhelming." *Id.* Vialva callously "decided the Bagleys had to be killed because they had seen his face." *Id.* He executed the Bagleys as they begged for their lives and decided to burn their car and bodies. *Id.* The killings demonstrated "substantial planning" that aimed to cover up the carjacking and robbery Vialva and others had already perpetrated. *Id.* Other evidence adduced during the penalty phase established that Vialva had a history of violence, including dozens of burglaries and peripheral

---

[9] Vialva's comparison (Pet. 60–61) to the mitigation evidence adduced during the penalty phase in *Andrus v. Texas*, 140 S. Ct. 1875 (2020), is flawed. If anything, the "tidal wave of information" presented during the state habeas proceedings in *Andrus* closely resembled the mitigation evidence that Vialva's counsel presented during the penalty phase in Vialva's case. *See id.* at 1879–80 (discussing a "childhood marked by extreme neglect and privation" with a mother who abandoned her children, and noting that Andrus "struggled with mental health issues").

Resp't Return to Order to Show Cause                    29

participation in a prior murder committed by a fellow gang member. *Id.* Any error in procuring funding would not have changed the jury's death verdict.

### 2.   Future Dangerousness

Vialva next contends (Pet. 62–82) that his counsel proved ineffective by failing to rebut the government's argument that future dangerousness was an applicable aggravating factor. A defendant's future dangerousness is a legitimate non-statutory aggravating factor in a capital case. *See Simmons v. South Carolina*, 512 U.S. 154, 162 (1994) (Blackmun, J.) (plurality opinion); *United States v. Corley*, 519 F.3d 716, 723–24 (7th Cir. 2008). Vialva's counsel prepared for the government's future dangerousness case by retaining Cunningham, a "well-respected mental health expert who has frequently testified for the defense in capital cases." *Bernard*, 762 F.3d at 479. During the penalty phase, Cunningham "offered statistical models to counter the Government's testimony regarding future dangerousness." ECF No. 449 at 58. As the Fifth Circuit has previously determined, counsel's decision to call Cunningham in an effort to undermine the government's future dangerousness case "was not ineffective because he presented strong mitigating evidence." *Bernard*, 762 F.3d at 479.

None of Vialva's counterarguments has merit. Despite Cunningham's extensive testimony "highlight[ing] mitigating factors and risk factors," Vialva spends pages (Pet. 64–76) second-guessing his counsel's considered decision to present Cunningham as a mitigation expert. Simply because Cunningham was subjected to "vigorous cross-examination," *Bernard*, 762 F.3d at 479, that exposed flaws in Vialva's case does not mean that counsel's decision to present him as a mitigation witness in the first place was constitutionally flawed.

Vialva also faults (Pet. 76-80) his counsel for failing to object to or cross-examine government witnesses Dr. Richard Coons and Anthony Davis. But as Vialva concedes (Pet. 77), his counsel cross-examined Coons, inquiring both whether

Coons had statistical data to support his conclusions and whether he was being paid to testify. Davis addressed prison gang membership but did not address Vialva specifically. Counsel's decision not to cross-examine him was reasonable under those circumstances. *See United States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998) (per curiam) ("[T]he conduct of examination and cross-examination is entrusted to the judgment of the lawyer, and an appellate court on a cold record should not second-guess such decisions unless there is no strategic or tactical justification for the course taken.").

Vialva also presses perfunctory arguments (Pet. 80-81) about his counsel's failure to object to the jury instructions' description of the future-dangerousness aggravator and to the prosecutor's reference to "lack of remorse" during opening statements. The jury instructions merely described, in general terms, the types of evidence the government had relied upon to establish future dangerousness, *see* ECF No. 325 at 17 (explaining that "the government has alleged" future dangerousness "in that the defendant has engaged in a continuing pattern of violent conduct, has threatened other[s] with violence, or has demonstrated low rehabilitative potential"). The instructions did not suggest that the jury was "*require[d]*" to find future dangerousness on that basis or absolve the jury of its obligation to conduct "the individualized sentencing required by the Eighth Amendment." Pet. 80–81. To the contrary, the instructions made clear that the jury was not required to accept the government's arguments or evidence as true, ECF No. 325 at 5–6, 10; that the jury was required to make an independent determination of whether each aggravating factor had been proved, *id.* at 18; and that the jury's ultimate sentencing decision must be based on the "defendant's own individual conduct, character, background and record" after full consideration of the aggravating and mitigating factors found to exist, *id.* at 21.

As for the prosecutor's reference to "lack of remorse" during opening statements, Vialva acknowledges that his counsel had already objected to evidence of lack of remorse and that the court later sustained that objection during trial. Pet. 81. Counsel wisely may have decided not to lodge a specific objection to the mention of lack of remorse during opening statements and risk focusing the jury on that concept. *See* ECF No. 317 at 7. In any event, the prosecutor's reference to lack of remorse was fleeting. *Id.* (stating that government's proof of future dangerousness "may include evidence of a continuing pattern of violent conduct, threatening others with violence, demonstrating low rehabilitative potential, or lack of remorse"). As explained, the jury instructions did not include lack of remorse among the evidence supporting the future-dangerousness aggravator, ECF No. 325 at 17, and there is no indication that the jury considered it.

Finally, Vialva contends (Pet. 81–82) that his appellate counsel was ineffective in failing to challenge the inclusion of non-statutory aggravators in the first place. But any such challenge would have been unavailing given the uniform determination of the federal courts before and after Vialva's sentencing that the government may submit aggravating factors beyond those necessary to establish a defendant's eligibility for a death sentence—including, specifically, future dangerousness. *See Simmons*, 512 U.S. at 162 (plurality opinion) ("Although South Carolina statutes do not mandate consideration of the defendant's future dangerousness in capital sentencing, the State's evidence in aggravation is not limited to evidence relating to statutory aggravating circumstances."); *Corley*, 519 F.3d at 723 (noting "the widespread acceptance that evidence of future dangerousness is indeed a relevant consideration in the sentencing process"); *see also, e.g.*, *United States v. Lawrence*, 735 F.3d 385, 419–20 (6th Cir. 2013) (rejecting constitutional challenges to inclusion of non-statutory aggravators, and citing cases). In any event, even if Vialva could establish that his counsel's response to the

government's future dangerousness case was in some way deficient, he cannot establish prejudice given the "overwhelming" evidence that Vialva spearheaded a heinous and premeditated double murder. Even if the jury had disregarded all other evidence of Vialva's dangerousness, his actions in carjacking, robbing, kidnapping, and then "mercilessly sho[oting] the Bagleys in their heads after they begged for their lives" would have amply established that aggravating factor. ECF No. 449 at 59.

### 3.   Absence of Aggravating Factors in Indictment

Finally, Vialva contends (Pet. 82–94) that his counsel was deficient when he failed to challenge the absence of aggravating factors in the indictment. At the time of indictment and trial, the government was not required to allege in an indictment the aggravating factors that render a defendant eligible for death. *See Walton v. Arizona*, 497 U.S. 639, 647–48 (1990). The indictment did not, therefore, list the statutory aggravators, although the government separately filed a pretrial notice listing them. ECF No. 449 at 20; ECF No. 174. In 2002, while Vialva's case was on direct appeal, the Supreme Court concluded in *Ring v. Arizona*, 536 U.S. 584 (2002), that aggravating factors that render a defendant death-eligible amount to "the functional equivalent of an element of a greater offense" that must be proven to a jury beyond a reasonable doubt. *Id.* at 609. Following *Ring*, an indictment must allege the aggravators that make a defendant death-eligible. *United States v. Robinson*, 367 F.3d 278, 284 (5th Cir. 2005). Failure to charge the aggravators is susceptible to harmless-error review. *Id.* at 284-86.

Vialva's counsel was not constitutionally ineffective for failing to raise a *Ring* claim on direct appeal. Such a claim would have failed for two reasons. First, it would not have satisfied plain-error review, as the Fifth Circuit concluded when faced with an identical claim raised by Vialva's codefendant, Bernard. *See Bernard*, 299 F.3d at 488–89. Second, the error—failing to obtain a grand jury indictment

that lists statutory aggravators—is harmless: the government's notice of intent to seek the death penalty provided Vialva with "with fair notice of . . . each and every statutory and nonstatutory aggravating circumstance that the prosecutor intended to prove at trial," *United States v. Higgs*, 353 F.3d 281, 307 (4th Cir. 2003), and the petit jury's unanimous findings that the statutory aggravators existed beyond a reasonable doubt, and the overwhelming evidence supporting those factors, establishes that a grand jury would have at least found probable cause to allege those statutory aggravators in the indictment. *See Robinson*, 367 F.3d at 288–89 (citing *United States v. Mechanik*, 475 U.S. 66, 70 (1986)); *see also United States v. Patterson*, 241 F.3d 912, 914 (7th Cir. 2001) (per curiam) ("Once the petit jury finds [a fact] beyond a reasonable doubt . . ., we can be confident in retrospect that the grand jury (which acts under a lower burden of persuasion) would have reached the same conclusion."). An attorney does not perform ineffectively by forgoing losing arguments. And, as noted above, any error would not have prejudiced Vialva given the overwhelming evidence of his guilt.

### D.   The Eighth Amendment Does Not Preclude the Death Penalty Based on Vialva's "Mental Age" at the Time of His Offenses.

In his initial § 2255 motion, Vialva contended that his counsel was ineffective in failing to present evidence during the guilt phase of Vialva's trial that his "cognitive capacities were not those of a normal adult" and that his "mental age" at the time of the murders effectively made him a juvenile. ECF No. 372 at 83–85. In support of that theory, Vialva introduced a declaration by a psychologist, Dr. Daneen Milam, who opined that an individual's brain continues to develop "until the early twenties" and that Vialva may have been "two to three years younger in brain development than his age peers." ECF No. 374 at 52; *see* Pet. 96 & Exh. 20 at 8 (same). Vialva further argued that his counsel was ineffective in failing to raise

issues related to his youth and mental state as mitigating factors during the trial's penalty phase. ECF No. 372 at 122–25.

While Vialva's § 2255 motion was pending, the Supreme Court held in *Roper v. Simmons*, 543 U.S. 551 (2005), that the Eighth Amendment precludes the death penalty for "offenders who were under the age of 18 when their crimes were committed." 543 U.S. at 578. The Court found evidence of a "national consensus against the death penalty for juveniles," *id.* at 564, and relied on research studies to discern "[t]hree general differences" between adults and those under 18 that justified its holding. *Id.* at 569–70, 573. First, adolescents often demonstrate a "lack of maturity and an underdeveloped sense of responsibility" that "often result in impetuous and ill-considered actions and decisions." *Id.* at 569 (quotations omitted). Second, "juveniles are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure." *Id.* And third, "the character of a juvenile is not as well formed as that of an adult," meaning that "[f]rom a moral standpoint it would be misguided to equate the failings of a minor with those of an adult." *Id.* at 570. The Court acknowledged that "[t]he qualities that distinguish juveniles from adults do not disappear when an individual turns 18," and that "[d]rawing the line at 18 years of age" was "subject . . . to the objections always raised against categorical rules." *Id.* at 574. But "[t]he age of 18 is the point where society draws the line for many purposes between childhood and adulthood," and the Court therefore concluded that 18 is "the age at which the line for death eligibility ought to rest." *Id.*

In light of *Roper*, Vialva sought leave to amend his § 2255 motion in order to (1) revise his existing ineffectiveness claims to focus more specifically on the "legal, scientific, and societal factors" related to juvenile culpability addressed in *Roper*, ECF No. 428 at 1–8; and (2) add a new substantive claim that the Eighth Amendment forbids the death penalty for adults who have the "mental age" of a

juvenile, ECF No. 429 at 2–6; ECF No. 429-1. The district court granted Vialva's motions to add or modify those claims, ECF No. 449 at 62, and rejected them on the merits. The court explained that Vialva's substantive Eighth Amendment claim was foreclosed by *Roper* and circuit precedent establishing that an adult cannot claim a categorical exemption from the death penalty on the ground that he had the "mental age" of a juvenile. *Id.* at 27 (citing cases). Because Vialva's claim "ha[d] no merit," the court determined, his counsel "could not have rendered ineffective assistance by failing to raise" it at trial. *Id.* at 28. In any event, the court observed that Vialva's counsel had introduced expert testimony and other evidence about Vialva's childhood and mental state, *id.* at 54–58, and found that the record would likely have refuted any additional testimony about supposed "'cognitive' disorders," "poor impulse control," susceptibility to peer pressure, and other qualities of youth, *id.* at 44, 59. The Fifth Circuit denied a COA, finding that Vialva was an adult when he committed the murders and that there was "no legal support for Vialva's argument" that the Eighth Amendment nonetheless barred the death penalty based on his "'mental age.'" *Bernard*, 762 F.3d at 482–83 (citing *Roper*).

In his § 2241 petition, Vialva renews his argument that the Eighth Amendment precludes the death penalty based on his "mental age" at the time of the murders. He acknowledges that "*Roper* is dispositive of the Eighth Amendment's outer limits when applied to a group of defendants identified by the single, objectively verifiable criterion of chronological age," but contends that *Roper*'s reasoning also suggests that "[t]he same Eighth Amendment concerns apply to the group of defendants whose mental age is less than that of a fully functioning adult." Pet. 98. That contention lacks merit.

The Supreme Court acknowledged in *Roper* that "[t]he qualities that distinguish juveniles from adults do not disappear when an individual turns 18," but nevertheless adopted a bright-line rule setting 18 as "'the age at which the line

for death eligibility ought to rest'" for purposes of the Eighth Amendment. 543 U.S. at 574. Vialva's argument would require more than an extension of *Roper*'s reasoning to a new situation—it would require this Court to say that *Roper* drew the line in the wrong place. That "certainly is not [this Court's] role." *United States v. Duncan*, 413 F.3d 680, 684 (7th Cir. 2005).

Every federal court to have considered a claim that the Eighth Amendment's categorical bar on certain punishments for juveniles should turn on an offender's "mental age" at the time of his offense, rather than his chronological age, has rejected it. *See, e.g.*, *United States v. Tsarnaev*, No. 16-6001, 2020 WL 4381578, at *53 (1st Cir. July 31, 2020); *United States v. Marshall*, 736 F.3d 492, 498 (6th Cir. 2013); *In re Garner*, 612 F.3d 533, 535–36 (6th Cir. 2010); *Parr v. Quarterman*, 472 F.3d 245, 261 (5th Cir 2006); *Noguera v. Davis*, 290 F. Supp. 3d 974, 1097–99 (C.D. Cal. 2017); *United States v. Lopez-Cabrera*, No. S5 11-cr-1032-PAE, 2015 WL 3880503, at *2–4 (S.D.N.Y June 22, 2015) (unpublished); *Melton v. Tucker*, No. 1:08-cv-34-RS, 2013 WL 11326076, at *56 (N.D. Fla. May 31, 2013) (unpublished). As the Sixth Circuit observed in *Marshall*, "the Supreme Court's jurisprudence concerning juveniles and the Eighth Amendment" establishes that "the only type of 'age' that matters is chronological age." 736 F.3d at 498. An "approach that defines a juvenile by factors other than chronological age would be essentially unmanageable," requiring "tedious expert testimony to determine whether the defendant's mental age was commensurate with his chronological age" and potentially opening the door to the execution of "individuals *under* 18 with the mental maturity of adults." *Id.* at 498–99 (emphasis added); *see id.* at 500 ("Considerations of efficiency and certainty require a bright line separating adults from juveniles. For purposes of the Eighth Amendment, an individual's eighteenth birthday marks that bright line."). "[A]n immature adult is still an adult" for constitutional purposes, and "[t]he reasons for

according special protections to offenders under 18" therefore "cannot be used to extend the same protections to offenders over 18." *Id.* at 498, 500.

Vialva's contrary argument rests almost exclusively on the reasoning of a since-vacated decision of a county court in Kentucky, which determined that the State's death penalty statute violated the Eighth Amendment when applied to individuals under the age of 21. *See* Pet. 99 (citing *Commonwealth v. Bredhold*, No. 14-cr-161 (Fayette Cir. Ct. Aug. 1, 2017), *vacated*, 599 S.W.3d 409 (Ky. 2020), *petition for cert. filed*, No. 19-8873 (July 1, 2020)). Relying on that decision, he argues that "recent scientific findings and court opinions[] further corroborate that turning eighteen does not turn a youth into an adult." Pet. 99. But Vialva points to no research regarding brain maturation that is substantially different from the research available when *Roper* was decided. *See Roper*, 543 U.S. at 569–70, 573 (citing studies). Some of the purportedly "recent" research on which he relies predates *Roper*. *See* Thomas Grisso et al., *Juveniles' Competence to Stand Trial: A Comparison of Adolescents' and Adults' Capacities as Trial Defendants*, 27 Law & Hum. Behav. 333 (2003). Other research merely reinforces studies that existed long before *Roper*, *see* Laurence Steinberg et al., *Are Adolescents Less Mature Than Adults?*, 64 Am. Psych. 583, 587 (2009), including research that *Roper* itself relied upon, *compare id.* at 585, *with Roper*, 543 U.S. at 569–70.

Vialva cites additional research that does not support his claim. *See* Elizabeth Cauffman et al., *Age Differences in Affective Decision Making as Indexed by Performance on the Iowa Gambling Task*, 46 Dev. Psych. 193, 204, 206 (2010) (explaining that "laboratory tasks measuring the reasoning skills and cognitive capabilities presumed to affect risky decision making have not found age differences in these abilities after age 15," and that "affective processing" continuously "improves throughout adolescence and into young adulthood"); Laurence Steinberg et al., *Age Differences in Future Orientation and Delay Discounting*, 80 Child Dev.

28, 40 (2009) (noting that age differences in "the anticipation of future consequences[] and delay discounting" were "not seen beyond middle adolescence"). Vialva also neglects to mention the significant body of research that casts doubt on whether individuals over the age of 18 are cognitively different from older adults in terms of impulse control, risk-taking, and other qualities that may bear on juveniles' criminal culpability.[10]

But even if Vialva could point to a radical and uniformly accepted change in our understanding of brain maturation since *Roper* was decided—or compelling evidence that his personal "mental age" at the time he committed his crimes was lower than 18—it still would not make a difference. As explained, the Supreme Court was fully aware at the time of *Roper* that "[t]he qualities that distinguish juveniles from adults do not disappear when an individual turns 18," yet the Court nonetheless concluded that 18 was the appropriate age at which to draw the line. 543 U.S. at 574. Whether to change that line to include "mental age" claims like Vialva's is the Supreme Court's "prerogative alone." *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997); *see Duncan*, 413 F.3d at 684.

Regardless, Vialva cannot show any likelihood that an Eighth Amendment claim related to his "mental age" would have succeeded on the facts of his case. For starters, Vialva did introduce extensive expert testimony during the penalty phase of his trial that "brain development continues to age twenty-five" and that individuals who are 19 years old—and Vialva specifically—"are less mature," "more impulsive," and "not as capable of controlling their actions and thinking in terms of

---

[10] *See, e.g.*, Daniel Romer et al., *Beyond Stereotypes of Adolescent Risk Taking: Placing the Adolescent Brain in Developmental Context*, 27 Dev. Cognitive Neuroscience 19, 20–30 (2017); Judith Bessant & Rob Watts, *The Mismeasurement of Youth: Why Adolescent Brain Science is Bad Science*, 7 Contemp. Soc. Sci. 181, 182, 186–194 (2012); Michael Males, *Does the Adolescent Brain Make Risk Taking Inevitable? A Skeptical Appraisal*, 24 J. Adolescent Rsch. 3, 5–18 (2009).

long-range consequences" as older adults. ECF No. 318 at 108–09 (testimony of Dr. Mark Cunningham); *see id*. at 110, 111–44 (addressing numerous "risk factors" that may have reduced Vialva's mental age). Based on that testimony, Vialva submitted the fact that he "was nineteen at the time of the offense" as a mitigating factor—which the jury unanimously rejected. ECF No. 286 at 7.[11]

As the district court explained in the § 2255 litigation, additional evidence that Vialva exhibited qualities associated with youth would not likely have mattered in light of the strong evidence that those qualities did not affect his conduct on the night of the murders. *See* ECF No. 449 at 44, 59 (recounting evidence that Vialva was the leader and main driver of the plot to kidnap and murder the Bagleys and that he carried out the killings after substantial planning in order to prevent his future identification). Indeed, as the court observed, additional evidence would have been a "double-edged sword" because it may have reinforced Vialva's dangerousness. *Id*. at 58–59. The jury may, for example, have viewed evidence that Vialva committed the murders in "the pursuit of arousing, rewarding, exciting, or novel experiences," Pet. 100 (citation omitted), as aggravating his crime, not mitigating it. The district court and court of appeals correctly rejected Vialva's claim that his "mental age" precludes the death penalty, and he presents no reason for this Court to second-guess that conclusion.

---

[11] To the extent Vialva suggests that jury behaved irrationally in failing to find his age as a mitigating factor, Pet. 94-95, that claim was raised and properly rejected on his direct appeal. *See Bernard*, 299 F.3d at 485–86 (explaining that federal law does not "'require a capital jury to give mitigating effect or weight to any particular evidence,'" and that the jury's decision that "the[] appellants' ages were not mitigating" was not arbitrary) (quoting *United States v. Paul*, 217 F.3d 989, 999–1000 (8th Cir. 2000)).

## III.   A Stay of Execution Is Not Warranted.

In his request for relief, Vialva requests "a stay of execution pending a final resolution of the claims raised" in his § 2241 petition. Pet. 102. Vialva does not cite the standards for obtaining a stay or present any substantive argument as to why those standards are met. His request for a stay should be denied on that basis alone. *See, e.g.*, *United States v. Cisneros*, 846 F.3d 972, 978 (7th Cir. 2017) ("We have repeatedly and consistently held that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.") (quotation marks omitted).

In any event, Vialva is not entitled to a stay. A stay of execution is a form of equitable relief to which the standards for a preliminary injunction apply. *Williams v. Chrans*, 50 F.3d 1358, 1360 (7th Cir. 1995) (per curiam); *see Nken v. Holder*, 556 U.S. 418, 434 (2009) (noting the "substantial overlap" between standards for stays and preliminary injunctions). A party seeking a stay pending additional legal proceedings bears the burden of demonstrating that (1) he has a "strong" likelihood of success on the merits of his claim; (2) he "will be irreparably injured absent a stay"; (3) a stay will not "substantially injure the other parties interested in the proceeding"; and (4) "the public interest" favors a stay. *Nken*, 556 U.S. at 434; *see Lambert v. Buss*, 498 F.3d 446, 447 (7th Cir. 2007).

The Seventh Circuit has established several guidelines for applying the relevant equitable rules in the particular context of an application for a stay of execution. The requirement that the defendant "make a 'strong showing' of probable success on the merits" is a demanding one—a court may not grant a stay based on a mere "significant possibility" of success or a finding "that evaluating [the defendant]'s arguments will take more time." *Lee v. Watson* ("*Lee I*"), No. 19-3399, 2019 WL 6718924, at *1 (7th Cir. Dec. 6, 2019) (unpublished) (quoting *Nken*, 556 U.S. at 434). "The prospect of irreparable injury" is also "not itself enough" to justify

a stay of execution, *id.*, given that irreparable injury is generally taken as a given in capital cases, *Chrans*, 50 F.3d at 1360. As for the remaining equitable considerations, a court must recognize the government's "strong interest in proceeding with its judgment," and it must consider "the extent to which the inmate has delayed unnecessarily in bringing the claim." *Lambert*, 498 F.3d at 452 (quoting *Nelson v. Campbell*, 541 U.S. 637, 649–50 (2004)). Because the government has a "significant interest in enforcing its criminal judgments, there is a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay." *Id.* (quoting *Nelson*, 541 U.S. at 650).

Accordingly, the Seventh Circuit has determined that courts must focus on "two critical factors in evaluating whether a stay of execution should issue: (1) whether the inmate has delayed unnecessarily in bringing the claim; and (2) whether the inmate shows a significant probability of success on the merits." *Lambert*, 498 F.3d at 451. Absent a strong showing of both likelihood of success and diligence, a capital defendant is not entitled to a stay of execution. *Id.*; *see Barr v. Lee*, No. 20A8, 2020 WL 3964985, at *1–2 (July 14, 2020) (per curiam); *Lee I*, 2019 WL 6718924, at *1–2.

Vialva cannot show any likelihood of success on the merits of his claims. Vialva raised those same claims in his earlier § 2255 motion, and the district court fully considered and rejected them. Vialva challenged the district court's ruling before the Fifth Circuit and the Supreme Court, and lost. Federal law provides no avenue for Vialva to seek a do-over in this Court. And even if his claims were properly before this Court, they are meritless for the reasons described above. *See, e.g.*, *Lee II*, 964 F.3d at 666–67 (denying as "frivolous" a request for a stay of execution premised on claims raised in a § 2241 petition that could have been raised in an earlier § 2255 motion).

Vialva also delayed unnecessarily in filing his § 2241 petition. The district court denied Vialva's § 2255 motion in 2012, *see* ECF No. 449; the court of appeals denied his request for a COA in 2014, *see Bernard*, 762 F.3d 467; and the Supreme Court denied certiorari in 2016, *see Vialva*, 136 S. Ct. 1155. Vialva then filed a Rule 60(b)(6) motion in 2017, *see* ECF No. 553, raising precisely the same arguments he now claims satisfy the Saving Clause and open the door to § 2241 relief in this Court.

Accordingly, Vialva has been aware of all the facts and legal arguments raised in his current habeas petition for almost three years. Although he spent some of that time litigating his Rule 60(b)(6) motion, the courts repeatedly advised him that it was jurisdictionally barred and, in any event, it was finally put to rest on January 13, 2020, when the Supreme Court denied certiorari. *See* ECF No. 570 (Dec. 20, 2017) (dismissing motion); 904 F.3d 356 (denying COA); *Vialva*, 140 S. Ct. 860 (denying certiorari). And although this Court was closed for some purposes starting in March 2020 due to the COVID-19 pandemic, it has always been available to consider civil claims such as Vialva's. *See, e.g.*, General Order, *In re: Court Operations Under the Exigent Circumstances Created By COVID-19 and Related Coronavirus*, at 2 (S.D. Ind. Mar. 13, 2020).

If in fact Vialva believed that he would be entitled to relief in this Court, he presumably would have filed a § 2241 petition as soon as he had grounds to do so. Instead, he waited to file his petition until August 10, 2020, ten days after the government scheduled his execution for September 24. Vialva provides no explanation for that timing. In determining whether to issue a stay of execution, "[t]he Supreme Court has stressed the need to be wary of obvious dilatory tactics." *Lambert*, 498 F.3d at 452 (citing *Gomez v. U.S. Dist. Ct.*, 503 U.S. 653, 654 (1992) (per curiam)). Vialva should not be permitted to wait until his execution is scheduled to file a 105-page habeas petition, along with hundreds of pages of

exhibits, and then, "by the very act of delay, justify postponement of the execution" on the ground that "evaluating [his] arguments will take more time." *Lee I*, 2019 WL 6718924, at *1–2.

To be clear, this Court can—and should—obviate any need to consider a stay by denying Vialva's petition. But even if the Court considers his stay request, it should deny a stay based on Vialva's inability to demonstrate a strong likelihood of success and his delay in seeking relief. Vialva has had over 20 years to challenge his convictions and death sentence, and he has done so to the full extent authorized by law. This Court should allow his lawful punishment to proceed.

## CONCLUSION

For these reasons, Vialva's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 and his request for a stay of execution should be denied.

Respectfully Submitted,

JOSH J. MINKLER
United States Attorney

By:    *s/ Elizabeth Berenguer*
ELIZABETH BERENGUER
Special Assistant United States Attorney
601 NW Loop 410, Suite 600
 San Antonio, Texas 78216
(210) 384-7100 (phone)
(210) 384-7126 (fax)
elizabeth.berenguer@usdoj.gov

**CERTIFICATE OF SERVICE**

I certify that on August 25, 2020, I electronically filed this document with the

Clerk of Court using the CM/ECF system, which will send notification to:

Susan M. Otto
Federal Public Defender
Western District of Oklahoma
susan_otto@fd.org

Emma V. Rolls
Assistant Federal Public Defender
Capital Habeas Unit
emma_rolls@fd.org

*Attorneys for Petitioner.*

> *s/ Elizabeth Berenguer*
> ELIZABETH BERENGUER
> Special Assistant United States Attorney