# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## TERRE HAUTE DIVISION

| | | |
|---|---|---|
| **CHRISTOPHER ANDRÉ VIALVA,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | **Case No. 2:20-cv-00413-JMS-DLP** |
| | ) | |
| **WARDEN, USP-TERRE HAUTE,** | ) | **CAPITAL CASE** |
| **UNITED STATES OF AMERICA,** | ) | **EXECUTION SCHEDULED FOR** |
| | ) | **SEPTEMBER 24, 2020** |
| **Respondents.** | ) | |

## MOTION FOR STAY OF EXECUTION

## <u>INTRODUCTION</u>

Petitioner Christopher André Vialva respectfully requests a stay of execution pending the Court's consideration of his Petition for Writ of Habeas Corpus filed pursuant 28 U.S.C. § 2241. In his Petition, Mr. Vialva seeks redress for grave Constitutional violations that he has never had a meaningful opportunity to remedy, and which this Court has the power to consider and remedy.[1]

As discussed below, granting Mr. Vialva a stay poses minimal harm to the Government and none at all to the public. The words of another court faced with a looming execution date and important unresolved issues are on point here: "[N]o significant harm to the public interest could

---

[1]In the Petition, Mr. Vialva requested a stay in his prayer for relief, *see* Pet. at 102, with the intention of later briefing that request in a standalone Motion for Stay of Execution filed contemporaneously with his Reply to Respondents' Return to Order to Show Cause, *see Lee v. Warden*, Case No. 2:19-cv-468-JPH-DLP (S.D. Ind.), Dkt. 15, 17. As intended, Mr. Vialva now files this Motion for Stay of Execution contemporaneously with his Reply to Respondents' Return to Order to Show Cause. Respondents' Return contains substantive arguments against Mr. Vialva's request for a stay. In this Motion, Mr. Vialva addresses those arguments, fully understanding that the Government will have an opportunity to respond separately to this Motion.

arise from the proper, informed, deliberate adjudication" of Mr. Vialva's claims. *See Harris v. Johnson*, 323 F. Supp. 2d 797, 810 (S.D. Tex. 2004). In light of the looming, irrevocable harm to Mr. Vialva that would result from his unjust execution and for the additional reasons discussed below, the issuance of a stay of execution is warranted.

## ARGUMENT

## I. MR. VIALVA IS ENTITLED TO A STAY OF EXECUTION.

The standards governing preliminary injunctions apply to execution stays in habeas proceedings. *See Williams v. Chrans*, 50 F.3d 1358, 1360 (7th Cir. 1995). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Further, the court must consider "the extent to which the inmate has delayed unnecessarily in bringing the claim." *Nelson v. Campbell*, 541 U.S. 637, 649-50 (2004). In death penalty cases, a stay is warranted upon "a showing of a significant possibility of success on the merits." *Hill v. McDonough*, 547 U.S. 573, 584 (2006).

### A. Mr. Vialva Has Shown a Significant Possibility of Success on the Merits of His Claims.

"As a general rule, a federal prisoner wishing to collaterally attack his conviction or sentence must do so under § 2255." *Chazen v. Marske*, 938 F.3d 851, 856 (7th Cir. 2019). But Congress created the Savings Clause within § 2255 as a narrow exception to this "general rule." Determining whether the Savings Clause is met is a "very knotty procedural issue" of "staggering" complexity. *Id.* at 855-56. Although it is difficult to "identify exactly what [the Savings Clause] requires," *id.* at 863 (Barrett, J., concurring), several guiding principles have emerged from the Seventh Circuit.

2

The Seventh Circuit has described § 2255(e) inadequacy variously as a "glitch" in the remedy, *Unthank v. Jett*, 549 F.3d 534, 536 (7th Cir. 2008), a "lacuna" in its functioning, *Webster v. Daniels,* 784 F.3d 1123, 1138 (7th Cir. 2015) (*en banc*), or a "structural problem" in § 2255 that "forecloses even one round of effective collateral review" of the claim, *Taylor v. Gilkey*, 314 F.3d 832, 835 (7th Cir. 2002).

To invoke jurisdiction under § 2241, Mr. Vialva must show that § 2255 has proved inadequate or ineffective to "test the legality" of his death sentence. 28 U.S.C. § 2255(e); *Garza v. Lappin*, 253 F.3d 918, 921 (7th Cir. 2001) (something more than an inability to satisfy § 2255(h) is necessary to invoke the savings clause; prisoner must show that the § 2255 remedy has proved inadequate or ineffective). Inadequacy is demonstrated when § 2255 is "so configured as to deny a convicted defendant *any* opportunity for judicial rectification" of a fundamental defect in his conviction or sentence; or when the "essential function" served by habeas corpus is impaired "by the limitations on the use of the remedy provided in section 2255." *In re Davenport*, 147 F.3d 605, 609, 611 (7th Cir. 1998). Therefore, a petitioner with claims of the sort that "justif[y] collateral review, [but do not] justify sequential collateral attacks [under § 2255(h)]" may be able to pursue them via § 2241. *Taylor*, 314 F.3d at 835 (internal citations omitted).

The Seventh Circuit has found § 2241 jurisdiction available in a limited number of cases but a variety of situations. While each case discusses specific conditions necessary for § 2241 review, the cases read together do not establish any single rigid "test" for when § 2255 will be deemed inadequate. On the contrary, the need for § 2241 review arises from the particular way in which § 2255 has proved inadequate under the unique circumstances of the individual case. Close scrutiny of the case law finding § 2241 jurisdiction reveals one common theme: Where courts are confronted

with a claim of fundamental injustice unreviewable under § 2255, they have adopted a flexible approach to § 2241 review. *See Beason v. Marske*, 926 F.3d 932, 935 (7th Cir. 2019) (citing *Webster* as "noting differing emphases in our caselaw interpreting *Davenport* and concluding that '[a]ll of these decisions hold, nevertheless, that there must be some kind of structural problem with section 2255 before section 2241 becomes available.'"). This analysis is consistent with other circuits. *See*, *e.g., Poindexter v. Nash*, 333 F.3d 372, 378 (2d Cir. 2003); *In re Smith*, 285 F.3d 6, 8 (D.C. Cir. 2002); *In re Jones*, 226 F.3d 328, 333-34 (4th Cir. 2000); *In re Dorsainvil*, 119 F.3d 245, 251-52 (3d Cir. 1997). In his Petition and Reply, Mr. Vialva has demonstrated that § 2255 is inadequate, under the specific circumstances of his case, to redress the Constitutional claims he asserts. *See* Pet. at 5-11; Reply at 6-7. To avoid redundancy, Mr. Vialva will not repeat those arguments here.

What is more, Mr. Vialva has demonstrated a reasonable likelihood of success on the merits of the following Constitutional claims: (1) The district court failed to follow the law for appointment of counsel in death-eligible prosecutions, denying Mr. Vialva access to counsel qualified to defend him, Pet. at 12-22; (2) Mr. Vialva's Sixth Amendment right to effective assistance of counsel was abridged when his trial counsel applied for employment with the United States Attorney's Office during the pendency of his trial without securing consent before the conflict arose or an effective waiver after the conflict had occurred, Pet at 22-48; (3) Mr. Vialva was denied the effective assistance of counsel during the penalty phase of his trial, Pet. at 48-94; and (4) Enforcement of the death penalty on a person who, because of his mental age, lacks adult moral culpability violates the Eighth Amendment, Pet. at 94-101. For the reasons set forth in his Petition and Reply, Mr. Vialva has established a reasonable likelihood of success on the merits of these claims. Mr. Vialva has

ample evidence and precedent supporting these claims. To avoid redundancy, Mr. Vialva will not repeat those arguments here.

> **B.      Mr. Vialva Will Suffer Irreparable Harm.**

The irreparable harm to Mr. Vialva is clear: absent a stay, he could be executed on September 24, 2020, before he can fully litigate the Constitutional claims contained in his § 2241 petition. *See Williams v. Chrans*, 50 F.3d 1358, 1360 (7th Cir. 1995) (holding that "irreparable harm is taken as established in a capital case" because "[t]here can be no doubt that a defendant facing the death penalty at the hands of the [Government] faces irreparable injury").

> **C.      The Balance of Harms Weighs in Mr. Vialva's Favor.**

The Government's interest in carrying out the execution of Mr. Vialva on September 24, 2020, before he has a reliable opportunity for judicial review of his Constitutional violations, does not constitute substantial harm to the Government.

Mr. Vialva has diligently pursued relief for the alleged Constitutional violations every step of the way in the District Court for the Western District of Texas, in the Fifth Circuit, and in the United States Supreme Court, only to be stymied by the inadequacy of the § 2255 statute and the ongoing recalcitrance of Judge Smith. What is more, significant delays in resolving this litigation fall solely upon the United States. For example, Mr. Vialva petitioned the United States Supreme Court for a Writ of Certiorari on March 19, 2019. After seeking six extensions, the Government filed its response on December 6, 2019. *See Vialva v. United States*, Case No. 18-1222.

Similarly, the Government waited eight years – from 2011 to 2019 – to adopt a new execution protocol. *See In re Matter of the Federal Bureau of Prisons' Execution Protocol Cases*,

5

Case No. 1:19-mc-00145-TSC (D.D.C.), Dkt. 50 at 14.[2]  Only after it announced the new execution protocol and scheduled the recent federal executions, including Mr. Vialva's, has the Government exhibited its current level of urgency to enforce its criminal judgments.  This undermines any notion that additional delay will cause significant harm.

Absent a stay, Mr. Vialva could be executed even though there is a significant chance his death sentences were obtained in violation of his Constitutional rights.  When considered in the full context of Mr. Vialva's challenges to the constitutionality of his death sentences, the harm to Mr. Vialva far outweighs the harm to the United States.

**D.      The Public Interest Weighs in Favor of a Stay.**

There is no public interest in an unconstitutional execution.  Moreover, a stay would vindicate the public's interest in making sure the federal government does not violate the United States Constitution.  Mr. Vialva seeks a meaningful opportunity to have this Court consider the merits of his claims, and a delay of the execution for this purpose would not disserve the public interest.  *See Cooey v. Taft*, 430 F. Supp. 2d 702, 708 (S.D. Ohio 2006) ("[T]he public interest only is served by enforcing constitutional rights and by the prompt and accurate resolution of disputes concerning those constitutional rights.  By comparison, the public interest has never been and could never be served by rushing to judgment at the expense of a condemned inmate's constitutional rights.").  Here, the public interest would not be served by rushing to judgment where such extraordinary circumstances and equities exist.

---

[2]Mr. Vialva filed a challenge to the Constitutionality of the federal death penalty protocol in the District of Columbia before the Government announced his execution date.  *See Vialva v. Barr, et al.*, Case No. 1:20-cv-01693-TSC, Complaint (D.D.C  June 22, 2020), consolidated with *In re Matter of the Federal Bureau of Prisons' Execution Protocol Cases*, Case No. 1:19-mc-00145-TSC (D.D.C.).

**E.      Mr. Vialva Did Not Unnecessarily Delay Bringing His Claims.**

Contrary to the Government's arguments, (Government's Return to Order to Show Cause, hereinafter "GR") at 43, Mr. Vialva did not unnecessarily delay filing his § 2241 petition. As demonstrated above and in his § 2241 petition, Mr. Vialva has been constantly and diligently litigating his claims in the Western District of Texas, the Fifth Circuit, and the Supreme Court long before he had an execution date. Mr. Vialva's direct appeal concluded in June 2003. *See Vialva v. United States*, 539 U.S. 928 (2003). His § 2255 proceedings concluded in February 2016. *See Vialva v. United States*, 136 S. Ct. 1155 (2016). And his Rule 60(b) proceedings, in which he attempted to reopen his § 2255 proceedings after the information about Judge Smith came to light, concluded just this year in January 2020. *See Vialva v. United States*, 140 S. Ct. 860 (2020).

The Government relies on *Lambert v. Buss*, 498 F.3d 446 (7th Cir. 2007) to suggest that Mr. Vialva's § 2241 petition is merely a dilatory tactic to delay his execution. GR at 42. But *Lambert* is easily distinguishable from Mr. Vialva's case. In *Lambert*, the petitioner sought a preliminary injunction to stay his execution in the federal district court just nine days before his scheduled execution. 498 F.3d at 447. Further, such injunction was sought in the context of a § 1983 action, wherein the petitioner challenged the Indiana state execution protocol. Ultimately, the Seventh Circuit held the petitioner failed to show a reasonable likelihood of success on the merits of the underlying Eighth Amendment claim. *Id.* at 454-55. In contrast to *Lambert*, Mr. Vialva filed his § 2241 petition on August 10, 2020, forty-four days before his scheduled execution date of September 24, 2020, and just ten days after receiving notice from the Government of that date. And rather than pursuing an Eighth Amendment challenge in the context of a § 1983 action, Mr. Vialva

has presented claims showing his sentences of death rest on serious constitutional violations for which he has a reasonable likelihood of success.

## CONCLUSION

Mr. Vialva has demonstrated that all of the relevant factors weigh heavily in favor of this Court issuing a stay of execution so that Mr. Vialva may vindicate his rights and have the merits of his substantial grounds for relief properly considered.

Respectfully submitted,

/s/ Susan M. Otto
SUSAN M. OTTO
Federal Public Defender Western District of Oklahoma
215 Dean A. McGee Avenue   Suite 109
EMMA V. ROLLS
Assistant Federal Public Defender
Capital Habeas Unit   Suite 707
Oklahoma City, Oklahoma  73102
Telephone 405 609-5930      Telefacsimile 405 609-5932
Electronic Mail for Service: Susan_Otto@fd.org
emma_rolls@fd.org
Counsel for Christopher André Vialva

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2020, I electronically filed this document with the Clerk of the Court using the CM/ECF System which will send notification to:

Elizabeth Berenguer
United States Attorney's Office
601 NW Loop 410, Suite 600
San Antonio, Texas 78216
elizabeth.berenguer@usdog.gov

*Attorney for Respondents*

       /s/ Susan M. Otto
       SUSAN M. OTTO