UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

CHRISTOPHER ANDRE VIALVA,  §
   Petitioner,  §
                        §    No. 2:20-cv-00413-JMS-DLP
   v.  §    CAPITAL CASE
                        §    Execution Scheduled:
WARDEN, et al.,  §    September 24, 2020
   Respondents.  §

**RESPONDENTS' OPPOSITION TO
PETITIONER'S MOTION FOR STAY OF EXECUTION**

As Respondents explained in their response to the petition for habeas corpus under 28 U.S.C. § 2241, Dkt. No. 11 at 41–44, Petitioner Christopher Andre Vialva is not entitled to the extraordinary remedy of a stay of his lawfully imposed execution. Nothing in Vialva's most recent motion for a stay of execution suggests otherwise.

1.      As Vialava acknowledges, Dkt. No. 13 ("Mot.") at 2, a stay of execution is a form of equitable relief to which the standards for a preliminary injunction apply. *Williams v. Chrans*, 50 F.3d 1358, 1360 (7th Cir. 1995) (per curiam); *see Nken v. Holder*, 556 U.S. 418, 434 (2009) (noting the "substantial overlap" between standards for stays and preliminary injunctions). A party seeking a stay pending additional legal proceedings bears the burden of demonstrating that (1) he has a "strong" likelihood of success on the merits of his claim; (2) he "will be irreparably injured absent a stay"; (3) a stay will not "substantially injure the other parties interested in the proceeding"; and (4) "the public interest" favors a stay. *Nken*, 556 U.S. at 434 (quotation marks omitted); *see Lambert v. Buss*, 498 F.3d 446, 452–53 (7th Cir. 2007) (per curiam).

The Seventh Circuit has established several guidelines for applying the relevant equitable rules in the context of an application for a stay of execution. The requirement that the movant "make a '*strong* showing' of probable success on the

Resp'ts Opp. to Mot. for Stay of Execution                       1

merits" is a demanding one—a court may not grant a stay based on a mere "significant possibility" of success or a finding "that evaluating [the defendant]'s arguments will take more time." *Lee v. Watson* ("*Lee I*"), No. 19-3399, 2019 WL 6718924, at *1 (7th Cir. Dec. 6, 2019) (unpublished) (quoting *Nken*, 556 U.S. at 434) (emphasis added). Indeed, the Supreme Court recently vacated a stay of execution for a federal prisoner where the court of appeals had found only that the prisoner's claims were "worthy of further exploration" and that a stay would permit more "time for consideration and deliberation." *Purkey v. United States*, 964 F.3d 603, 618 (7th Cir.), *stay vacated*, --- S. Ct. ---, 2020 WL 3988688 (July 15, 2020); *see also Purkey v. United States*, 812 F. App'x 380, 382 (7th Cir. 2020) (unpublished) (clarifying that, to issue stay, likelihood of success must be "strong enough to satisfy *Nken*'s first requirement").

"The prospect of irreparable injury" is also "not itself enough" to justify a stay of execution, *Lee I*, 2019 WL 6718924, at *1, given that irreparable injury is generally taken as a given in capital cases where, as here, the inmate is challenging his conviction or sentence, *Chrans*, 50 F.3d at 1360. As for the remaining equitable considerations, when a defendant's conviction and sentence has been upheld on direct appeal and collateral review, a court must recognize the government's "strong interest in proceeding with its judgment" and must consider "the extent to which the inmate has delayed unnecessarily in bringing the claim" on which a stay application is based. *Lambert*, 498 F.3d at 452 (quoting *Nelson v. Campbell*, 541 U.S. 637, 649–50 (2004)); *see Bucklew v. Precythe*, 139 S. Ct. 1112, 1133–34 (2019) (explaining that "[b]oth the State and the victims of crime have an important interest in the timely enforcement of a [death] sentence" that has been upheld on direct appeal and collateral review, and "[c]ourts should police carefully against attempts to use [further] challenges as tools to interpose unjustified delay") (quotation marks omitted). Because the government has a "significant interest in

Resp's Opp. to Mot. for Stay of Execution                                    2

enforcing its criminal judgments, there is a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay." *Lambert*, 498 F.3d at 452 (quoting *Nelson*, 541 U.S. at 650).

Accordingly, the Seventh Circuit has determined that courts should focus on "two critical factors in evaluating whether a stay of execution should issue: (1) whether the inmate has delayed unnecessarily in bringing the claim; and (2) whether the inmate shows a significant probability of success on the merits." *Lambert*, 498 F.3d at 451. Absent a strong showing of both likelihood of success and diligence, a capital defendant is not entitled to a stay of execution. *Id.*; *see Barr* v. *Lee*, --- S. Ct. ---, 2020 WL 3964985, at *1–2 (July 14, 2020) (per curiam); *Lee I*, 2019 WL 6718924, at *1–2.

2.    Vialva's motion for a stay of execution should be denied because he cannot demonstrate any likelihood of success on the merits of his claims, let alone the "strong" showing that the Supreme Court and Seventh Circuit require. As explained in respondents' response to Vialva's § 2241 petition, Vialva raised those same claims in his earlier motion for postconviction relief under 28 U.S.C. § 2255, and the district court fully considered and rejected them. *See* Dkt. No. 11 at 6–12. Vialva challenged the district court's ruling before the Fifth Circuit and the Supreme Court, and lost. *See United States v. Bernard*, 762 F.3d 467 (5th Cir. 2014), *cert. denied*, 136 S. Ct. 1155 (2016). Federal law provides no avenue for Vialva to seek a do-over in this Court. *See* Dkt. No. 11 at 17–22. And even if Vialva's claims were properly before this Court, they are meritless for the reasons described in respondents' response to his § 2241 petition. *See id.* at 22–40; *cf. Lee v. Watson* ("*Lee II*"), 964 F.3d 663, 666–67 (7th Cir.) (denying as "frivolous" a request for a stay of execution premised on claims raised in a § 2241 petition that could have been

Resp'ts Opp. to Mot. for Stay of Execution                                    3

raised in an earlier § 2255 motion), *stay denied*, --- S. Ct. ---, 2020 WL 3964235 (July 14, 2020).

3.    The weakness of Vialva's claims underscores the public interest in implementing his capital sentence. Over the past 20 years, Vialva has repeatedly challenged his convictions and death sentence on direct appeal and collateral review, including in the Supreme Court. Every one of his challenges—including the claims he raises in his § 2241 petition—has been rejected. *See* Dkt. No. 11, at 6–15 (summarizing history). The public interest is therefore served by "proceeding with [the] judgment," not by allowing Vialva to delay it further by relitigating claims that have already failed. *Lambert*, 498 F.3d at 452 (quoting *Nelson*, 541 U.S. at 649–50); *see Bucklew*, 139 S. Ct. at 1133–34.

In arguing that the public interest instead favors a stay, Vialva asserts (Mot. 6) that "[t]here is no public interest in an unconstitutional execution." It is, of course, true that a defendant whose conviction or death sentence is unconstitutional should not be executed. But absent the "'strong showing' of probable success on the merits" that is required of stay movants in these circumstances, *Lee I*, 2019 WL 6718924, at *1, Vialva has offered no reason to believe that his execution would be unconstitutional. In short, "the public's interest in making sure the federal government does not violate the United States Constitution," Mot. 6, does not justify extraordinary relief where the movant has not established any likelihood that carrying out his sentence *would* violate the Constitution.

4.    Vialva also delayed unnecessarily in filing his § 2241 petition. The district court denied Vialva's § 2255 motion in 2012, *see* ECF No. 449;* the Fifth Circuit denied his request for a certificate of appealability ("COA") in 2014, *see* 762

---

* Citations to the Western District of Texas record refer to the assigned Electronic Case Filing (ECF) number for filed documents in Case No. 6:99-CR-00070-ADA.

F.3d 467; and the Supreme Court denied certiorari in 2016, *see* 136 S. Ct. 1155. Vialva then filed a Rule 60(b)(6) motion in 2017, *see* ECF No. 553, raising precisely the same arguments he now claims satisfy the Saving Clause and open the door to § 2241 relief in this Court. Accordingly, Vialva has been aware of all the facts and legal arguments raised in his current habeas petition for almost three years.

Vialva suggests that he should not be held accountable for this delay because he spent some of that time litigating his Rule 60(b)(6) motion. *See* Mot. 5 (arguing that "significant delays in resolving this litigation fall solely upon the United States" because the government obtained extensions of time in which to respond to the petition for a writ of certiorari concerning his Rule 60(b)(6) motion). That assertion lacks merit. The courts repeatedly advised Vialva that his Rule 60(b)(6) motion was jurisdictionally barred, and in any event, that motion was finally put to rest on January 13, 2020, when the Supreme Court denied certiorari. *See* ECF No. 570 (Dec. 20, 2017) (dismissing motion); 904 F.3d 356 (5th Cir. 2018) (denying COA); 140 S. Ct. 860 (2020) (denying certiorari). The government then waited an additional six months before scheduling his execution. Only then did Vialva file his § 2241 petition. If, in fact, Vialva believed that he would be entitled to habeas relief in this Court, he presumably would have filed a § 2241 petition as soon as he had grounds to do so, rather than waiting until his execution was imminent.

Vialva likewise argues (Mot. 5) that his failure to diligently press his claims should be excused because "the Government waited eight years—from 2011 to 2019—to adopt a new execution protocol." But Vialva is in this Court challenging his convictions and his sentence—not the execution protocol—and the fact that no execution is scheduled does not relieve a defendant of the obligation to expeditiously challenge the basis for his capital sentence. Indeed, waiting to assert such challenges until an execution is imminent appears to be the same kind of gamesmanship that the Supreme Court has cautioned against when it "stressed the

need to be wary of obvious dilatory tactics" in capital litigation. *Lambert*, 498 F.3d at 452 (citing *Gomez* v. *U.S. Dist. Ct.*, 503 U.S. 653, 654 (1992) (per curiam)).

In any event, the need for a new execution protocol arose solely because death-penalty opponents succeeded in making the drugs traditionally used in lethal injection—sodium thiopental and pentobarbital—unavailable. *See Glossip v. Gross*, 576 U.S. 863, 869-71 (2015). "Instead of proceeding with an inferior option" to conduct executions, "the government waited until pentobarbital again became available." *In re Fed. Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106, 128 (D.C. Cir. 2020) (Katsas, J., concurring). The government "can hardly be faulted for proceeding with caution" in identifying an alternative execution protocol that was viable and humane, and its "care in selecting an available and effective execution substance does not diminish the importance of carrying out [Vialva's] sentence[]." *Id.*

Regardless, the government announced its intention to resume federal executions over a year ago, *see* Press Release, U.S. Dep't of Just., Federal Government to Resume Capital Punishment After Nearly Two Decade Lapse (July 25, 2019), https://www.justice.gov/opa/pr/federal-government-resume-capital-punishment-after-nearly-two-decade-lapse, yet Vialva still waited until now to file his § 2241 petition. Vialva provides no explanation for that timing. He should not be permitted to wait until his execution is scheduled to file a 105-page habeas petition, along with hundreds of pages of exhibits, raising claims that he has known about for years and could have brought to this Court's attention much earlier—and then, "by the very act of delay, justify postponement of the execution." *Lee I*, 2019 WL 6718924, at *1–2.

5.      To be clear, this Court can—and should—obviate any need to consider a stay by denying Vialva's § 2241 petition. But even if the Court considers his stay motion, it should deny a stay based on Vialva's inability to demonstrate a strong

likelihood of success, his delay in seeking relief, or both. Vialva has had more than 20 years to challenge his convictions and death sentence, and he has done so to the full extent authorized by law. This Court should allow his lawful punishment to proceed.

Respectfully Submitted,

JOSH J. MINKLER
United States Attorney

By:    s/ Elizabeth Berenguer
ELIZABETH BERENGUER
Special Assistant United States Attorney
601 NW Loop 410, Suite 600
 San Antonio, Texas 78216
(210) 384-7100 (phone)
(210) 384-7126 (fax)
elizabeth.berenguer@usdoj.gov

Resp't's Opp. to Mot. for Stay of Execution                                                            7

## CERTIFICATE OF SERVICE

I certify that on September 1, 2020, I electronically filed this document with the Clerk of Court using the CM/ECF system, which will send notification to:

Susan M. Otto
Federal Public Defender
Western District of Oklahoma
susan_otto@fd.org

Emma V. Rolls
Assistant Federal Public Defender
Capital Habeas Unit
emma_rolls@fd.org

*Attorneys for Petitioner.*

> *s/ Elizabeth Berenguer*
> ELIZABETH BERENGUER
> Special Assistant United States Attorney

Resp't Opp. to Mot. for Stay of Execution                    8