UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| CHRISTOPHER ANDRE VIALVA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:20-cv-00413-JMS-DLP |
| | ) | |
| WARDEN, et al. | ) | |
| | ) | |
| Respondents. | ) | |

**Order Denying Petition for a Writ of Habeas Corpus**

Christopher Andre Vialva was convicted of murder and sentenced to death for killing Stacie and Todd Bagley on federal land and for carjacking resulting in death. The United States has scheduled his execution for September 24, 2020. On August 10, 2020, after pursuing a direct appeal and a 28 U.S.C. § 2255 motion, Mr. Vialva filed a petition for writ of habeas corpus pursuant 28 U.S.C. § 2241, arguing, among other things, that trial counsel was ineffective for representing him despite a conflict of interest. Although Mr. Vialva has alleged that one of his trial attorneys displayed a stunning disregard for his right to conflict-free counsel, this Court must deny the petition without reaching the merits because Mr. Vialva has not shown that § 2255 was "inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e).

## I. Background

On June 21, 1999, Mr. Vialva and two confederates asked Todd and Stacie Bagley for a ride outside a convenience store in Killeen, Texas.[1] After directing Todd to a secluded location, Mr. Vialva and another man pointed guns at the Bagleys, ordered them out of the car, took their

---

[1] The summary of Mr. Vialva's crimes is drawn from the Fifth Circuit's opinion on direct appeal, *United States v. Bernard*, 299 F.3d 467, 471 (5th Cir. 2002) ("*Bernard I*").

money, jewelry, and ATM cards, and forced them into the trunk. They then drove around for hours, stopping at ATMs to try to withdraw cash and running other errands, before eventually stopping at the Belton Lake Recreation Area on the Fort Hood military reservation. After his confederates poured lighter fluid in the interior of the car and opened the trunk, Mr. Vialva shot Todd in the head and Stacie in the face. Another man set fire to the car. Todd died from the gunshot wound, but Stacie died from smoke inhalation. Mr. Vialva and his confederates tried to flee in another vehicle, but they did not get far before driving into a muddy ditch. Local law enforcement found them trying to push the car out of the ditch and eventually arrested them after finding the Bagleys' bodies.

Mr. Vialva was convicted in the United States District Court for the Western District of Texas of carjacking resulting in death, conspiracy to commit murder, and two counts of murder within the special maritime and territorial jurisdiction of the United States. The jury recommended a death sentence, and District Judge Walter S. Smith imposed it.

Dwight Goains represented Mr. Vialva at both trial and sentencing. But from the moment he was appointed through the end of trial, Mr. Goains was seeking employment with the United States Attorney's Office for the Western District of Texas, the same office prosecuting Mr. Vialva. Dkt. 1-12 at 3 (Mr. Goains asserting that "for about the last eight or ten years [he had] been trying to apply to be an Assistant United States Attorney [(AUSA)]"). Indeed, Mr. Goains interviewed for a position in that office while representing Mr. Vialva and accepted an offer while Mr. Vialva's direct appeal was pending. Dkt. 1-14 (letter from Mr. Goains asserting that he interviewed for an AUSA position in February 2000 and accepted a position in February 2001). There is no evidence that Mr. Goains disclosed his employment prospects to Mr. Vialva until May 3, 2000—several months into the representation and just weeks before trial. *See* dkt. 1-15, ¶ 9 (Lisa McCalmont

declaration). On this date, Mr. Goains visited Mr. Vialva without co-counsel and obtained a waiver of the conflict signed by Mr. Vialva. *Id.*, ¶ 11. There is also no evidence that Mr. Vialva was advised of his right to have the advice of independent counsel before waiving such a significant conflict. Three days before trial, Mr. Vialva waived the conflict in open court after the district judge informed Mr. Vialva that he "would certainly consider" appointing new counsel if Mr. Vialva so chose. Dkt. 1-12 at 6.

Mr. Vialva did not argue Mr. Goains's apparent conflict of interest on direct appeal, but he raised it, among other claims, in a 28 U.S.C. § 2255 motion filed in the Western District of Texas. The district court denied relief, and the Fifth Circuit denied a certificate of appealability in August 2014. *United States v. Bernard*, 762 F.3d 467, 476−77 (5th Cir. 2014) ("*Bernard II*"). The Supreme Court denied certiorari.

Mr. Vialva later filed a motion for relief from judgment, *see* Fed. R. Civ. P. 60(b), citing recent revelations about the district judge who decided his § 2255 motion and presided at his trial. Judge Smith was sanctioned in 2015 for (1) sexually harassing a court employee; (2) failing to recuse himself from cases in which the attorney who represented him for his misconduct proceedings appeared in court; and (3) allowing others to make false factual assertions on his behalf during his misconduct proceedings. Dkt. 6. The district court found that the purported motion for relief from judgment was in fact a successive § 2255 motion and dismissed it. The Fifth Circuit affirmed, though on other grounds.

Next, Mr. Vialva filed a habeas corpus petition in this Court raising the following claims:

1. the district court failed to comply with 18 U.S.C. § 3005 by consulting with the Federal Public Defender before appointing trial counsel;

2. his execution would violate the Eighth Amendment because he lacked adult moral culpability at the time of his crimes; and

3. trial counsel was ineffective for

    a. representing Mr. Vialva despite a conflict of interest;

    b. failing to obtain adequate funding for the penalty phase;

    c. failing to present available mitigating evidence;

    d. failing to rebut the government's arguments about his future dangerousness; and

    e. failing to object to the government's presentation of non-statutory aggravating factors.

The respondent has answered, arguing that Mr. Vialva cannot raise these claims in a habeas corpus petition because he could have—and indeed did—raise them in a § 2255 motion. Dkt. 11 at 26−31; *see* 28 U.S.C. § 2255(e) (district court shall not entertain habeas petition raising claims that could have been brought in § 2255 motion unless § 2255 is "inadequate or ineffective to test the legality of [the prisoner's] detention"). Mr. Vialva argues that § 2255 was inadequate or ineffective as to his claims because the district judge's "misconduct and alcohol abuse during the period in which he presided over Mr. Vialva's trial and § 2255 proceedings precluded an untainted opportunity for meaningful review of Mr. Vialva's claims." Dkt. 12 at 12−13. He also argues that if § 2255(e) bars his petition, then the statute unconstitutionally suspends the writ of habeas corpus.

## II.     28 U.S.C. § 2255(e)

Habeas corpus is not the main avenue for prisoners convicted in federal court to challenge their convictions and sentences. Instead, federal prisoners are authorized to file a motion pursuant to 28 U.S.C. § 2255. *See* 28 U.S.C. § 2255(a). A habeas corpus petition from a federal prisoner "shall not be entertained" unless § 2255 "is inadequate or ineffective to test the legality of [the] detention." 28 U.S.C. § 2255(e). Courts have referred to this language as § 2255(e)'s "savings clause" or "safety valve." *Webster v. Daniels*, 784 F.3d 1123, 1135 (7th Cir. 2015) ("savings clause"); *Purkey v. United States*, 964 F.3d 603, 611 (7th Cir. 2020) ("safety valve").

The Seventh Circuit has recognized several situations in which § 2255 is inadequate or ineffective, such that § 2255(e) allows for the filing of a § 2241 petition. *See In re Davenport*, 147 F.3d 605, 611−12 (7th Cir. 1998) (claim relying on Supreme Court decision of statutory interpretation made retroactive to cases on collateral appeal); *Garza v. Lappin*, 253 F.3d 918, 921−23 (7th Cir. 2001) (claim relying on international tribunal's decision issued after § 2255 proceedings were completed); *Webster v. Daniels*, 784 F.3d 1123, 1135−44 (7th Cir. 2015) (en banc) (claim relying on evidence that existed but was unavailable at the time of trial and showed that defendant was categorically ineligible for the death penalty). These cases do not "rigidly describe the outer limits" of § 2255(e)'s safety valve. *Purkey v. United States*, 964 F.3d 603, 611−12 (7th Cir. 2020). At minimum, though, a petitioner must make "a compelling showing that, as a practical matter, it would be impossible to use [§] 2255 to cure a fundamental problem" alleged in the § 2241 petition. *Id.* at 615; *see Lee v. Watson*, 964 F.3d 663, 666 (7th Cir. 2020).

### III.    Discussion

Mr. Vialva has already litigated his underlying claims in a § 2255 motion. *Bernard II*, 762 F.3d at 476−77. He nevertheless asks this Court to consider his claims anew, this time in a § 2241 petition, because he claims § 2255 has proven inadequate or ineffective.

 Mr. Vialva's primary argument to invoke the §2255(e) safety valve is that Judge Smith's "misconduct and alcohol abuse during the period in which he presided over Mr. Vialva's trial and § 2255 proceedings precluded an untainted opportunity for meaningful review of Mr. Vialva's claims." Dkt. 12 at 12−13. The problem with this argument is that § 2255, coupled with Rule 60(b), provides an avenue through which to raise it. Indeed, Mr. Vialva raised this claim in his Rule 60(b) motion seeking relief from judgment on his § 2255 motion. *United States v. Vialva*, No. 6:99-cr-70-ADA, dkt. 553 (W.D. Tex.) (arguing that "[t]he District Judge's impairments during the trial

and his continuing reluctance to acknowledge those impairments during post conviction . . . undermine all confidence in his review of this case"). The district court construed the purported Rule 60(b) motion as a successive § 2255 motion and dismissed it for lack of jurisdiction. Dkt. 1-8. However, the Fifth Circuit agreed with Mr. Vialva that Rule 60(b) is the proper mechanism to challenge a procedural defect, such as judicial malfeasance, that undermines the result in § 2255 litigation. *United States v. Vialva*, 904 F.3d 356, 361 (5th Cir. 2018) ("Vialva [is] correct that Rule 60(b) motions can legitimately ask a court to reevaluate already-decided claims—as long as the motion credibly alleges a non-merits defect in the prior habeas proceedings."). The court nevertheless denied a certificate of appealability based, in part, on its conclusion that "Judge Smith's unrelated misconduct does not constitute a defect in the integrity of . . . Vialva's [§ 2255] proceedings." *Id.* The Supreme Court again denied certiorari.

Mr. Vialva further argues that § 2255 was inadequate or ineffective because the Fifth Circuit applied the wrong standard in denying a certificate of appealability following the denials of his § 2255 and Rule 60(b) motions. Dkt. 1 at 22−24. In effect, he asks this Court to act as a court of review to the Fifth Circuit. Section 2255(e) requires something more than an alleged error in another court's conclusion. *See Webster*, 784 F.3d at 1136 ("[S]omething more than a lack of success with a section 2255 motion must exist before the savings clause is satisfied."). And the United States Supreme Court, the appropriate court to review the lower courts' decisions, had the opportunity to review the decisions, but chose not to.

The structure of § 2255 has not prevented Mr. Vialva from raising claims in federal court. Instead, the both Western District of Texas and the Fifth Circuit considered and rejected Mr. Vialva's § 2255 claims, and the Fifth Circuit considered and rejected his Rule 60(b) arguments as to why his § 2255 litigation was procedurally defective. While this Court may well not have

decided these significant claims in the same way, Congress has required they be raised in a petition under § 2255. The claims were in fact so raised, and were decided with a merits analysis by both the district of conviction and the applicable court of appeals. Section 2255 is not inadequate or ineffective merely because Mr. Vialva is disappointed with the result or because this Court might have reached a different one. *Webster*, 784 F.3d at 1136 ("[T]here must be some kind of structural problem with section 2255 before section 2241 becomes available. In other words, something more than a lack of success with a section 2255 motion must exist before the savings clause is satisfied.").

Finally, the Court rejects Mr. Vialva's argument that, by barring his habeas corpus petition, § 2255(e) unconstitutionally suspends the writ of habeas corpus. Mr. Vialva was able to raise his claims in federal court by way of a § 2255 motion. *See Swain v. Pressley*, 430 U.S. 372, 381−82 (1977) (no Suspension Clause violation where prisoner may raise would-be habeas claims under § 2255, which provides "exact equivalent" remedy).

### IV.    Conclusion

Mr. Vialva raises a significant claim that the lone learned counsel who represented him at trial labored under a conflict of interest because counsel was seeking employment with the United States Attorney's Office during the course of his representation of Mr. Vialva. But Mr. Vialva has already raised that claim in prior proceedings under 28 U.S.C. § 2255 and was unsuccessful. Here, Mr. Vialva's petition for a writ of habeas corpus must be **denied** as barred by 28 U.S.C. § 2255(e). Mr. Vialva's motion to stay execution, dkt. [13], is **denied** because Mr. Vialva has not shown a strong probability of success on his claims. Final judgment shall now enter.

**IT IS SO ORDERED.**

Date: 9/8/2020

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Elizabeth Rachel Berenguer
US ATTORNEY'S OFFICE
elizabeth.berenguer@usdoj.gov

Susan Margaret Otto
FEDERAL PUBLIC DEFENDER WESTERN DISTRICT OF OKLAHOMA
susan_otto@fd.org

Emma Victoria Rolls
FEDERAL PUBLIC DEFENDER, WESTERN DISTRICT OF OKLAHOMA
emma_rolls@fd.org